Irwin A. SCHIFF

v.

Thomas C. KERRIGAN, et al.

Civ. No. N79–111(EBB).

United States District Court,
D. Connecticut.

Jan. 2, 1986.

John R. Williams, Williams & Wise, New Haven, Conn., for plaintiff.

Ralph G. Murphy, Carl R. Ajello, Robert L. Klein, Asst. Atty. Gen., Hartford, Conn., for defendants.

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

ELLEN B. BURNS, District Judge.

■ The plaintiff brings the instant action against two individuals who participated in a search of his apartment on February 22, 1979.[1] The search was conducted

---

1. The complaint names several individuals as defendants, all but one of whom were, at one time or another, employed by the State of Connecticut and worked under the auspices of the Special Investigations Section of the Connecticut Tax Department. The remaining named defendant, Charles Stuart, is alleged to have been an agent of the Internal Revenue Service, United States Department of the Treasury.

The original complaint named only Mr. Kerrigan as a defendant, and referred to "I.R. Taxer (1–5)" as additional unknown defendants. The complaint was amended to include defendants Wigglesworth, Newton, Norman, Stuart, Caputo and Kaczynski Dirienzo ("Kaczynski") when their identities were determined. The suit was dismissed against Wigglesworth, Norman, Newton and Caputo on March 16, 1984, after the plaintiff had failed to effectuate proper service as had been earlier ordered by the court. *See* Ruling on Motion to Dismiss, March 16, 1984. Summary judgment was entered in favor of defendant Stuart on the bases of sovereign immunity and qualified immunity and without plaintiff's opposition. *See* Ruling on Motion of Defendant Charles E. Stuart, April 5, 1984.

pursuant to a warrant, issued by Judge O'Donnell of the Connecticut Superior Court, which authorized the seizure of certain property, "to wit: sales files, order forms, inventory, purchase and sales records." During the execution of the warrant the officers seized certain items which are identified on an inventory form which was returned to the Superior Court, a copy of which has been appended as exhibit C to an affidavit submitted by the defendant Kerrigan. The plaintiff demanded the return of these items shortly after their seizure, which request was denied by the state authorities. The plaintiff thereupon brought this action under 42 U.S.C. § 1983, claiming that the defendants violated his rights under the First, Fourth, and Fourteenth Amendments in executing the warrant and failing to return the property. Because the court finds that, based upon the undisputed facts, the defendants are qualifiedly immune from liability for their actions pertaining to the search, seizure, and retention of the property in question, the defendants' motion for summary judgment is granted.[2]

## I. *Facts*

A motion for summary judgment may be granted only when the moving party establishes that there are no disputed issues of material fact, and that the undisputed facts, together with inferences that may properly be drawn from those facts, show that the movant is entitled to judgment as a matter of law. Rule 56(c), Federal Rules of Civil Procedure. All ambiguities in the evidence must be resolved against the moving party, and all reasonable inferences must be drawn in favor of the non-movant. *Heyman v. Commerce Industry Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir.1975). However, the plaintiff may not rest upon the bare allegations in his complaint, but must come forward with admissible evidence, by affidavit or otherwise, demonstrating that a controversy exists as to a material fact. *Dusanenko v. Maloney*, 726 F.2d 82, 84 (2d Cir.1984). The following facts appear to be uncontroverted.

On February 21, 1979, the defendant Kerrigan and his supervisor, William Wigglesworth, presented Judge O'Donnell with an application for a search warrant. This application was accompanied by an affidavit wherein Kerrigan and Wigglesworth set forth facts leading them to believe that the plaintiff was engaged in business as a seller without a sales tax permit in violation of Connecticut law. Judge O'Donnell reviewed the application and affidavit and issued the search warrant.[3]

The defendants, accompanied by several other agents and a uniformed Hamden policeman, executed the warrant the following morning. This was the first search in which Agent Kerrigan participated involving sales tax evasion and seizure of business records. Mr. Kerrigan was super-

---

Therefore Mr. Kerrigan and Ms. Kaczyński are the only remaining defendants.

2. In his opposition to the motion for summary judgment, the plaintiff asserts that because the defendants have only argued that their actions were proper under the Fourth Amendment, his claim that he was deprived of rights under the First Amendment has not been attacked. However, this view of the defendants' motion is somewhat myoptic. The only conduct alleged in the complaint to have violated plaintiff's rights is conduct related to the search, seizure, and retention of plaintiff's property. If the defendants' behavior was proper, or if they are immune from liability for that behavior, they cannot be held financially responsible for any damages plaintiff may have suffered as a consequence of that behavior, irrespective of any motive they might have had for seeking and executing the warrant. *Harlow v. Fitzgerald*, 457 U.S. 800, 817–818, 102 S.Ct. 2727, 2737–38, 73 L.Ed.2d 396 (1982).

3. The complaint does not allege that the affidavit did not set forth facts sufficient to establish probable cause. The complaint also does not allege that defendant Kerrigan deliberately or recklessly misrepresented the facts set forth in the affidavit. The plaintiff has not argued that the warrant was issued without probable cause or attempted to set forth any facts tending to show that the defendants should have known that the warrant was issued without probable cause. The court will construe plaintiff's complaint as confined to the facial validity of the warrant, the conduct of the defendants in executing the warrant, and the conduct of Agent Kerrigan in refusing plaintiff's demand that the seized property be returned.

vised by Mr. Wigglesworth during the conduct of the search.

Ms. Kaczynski was in the Connecticut Department of Revenue Services ("DRS") Connecticut Career Trainee Program at the time of the search. She had been assigned to the Special Investigations Section for an eight-day period, which included February 22, 1979. She was under the supervision of Agent Michelle Caputo during her assignment with the Special Investigations Section. She accompanied Agent Caputo in the search of plaintiff's apartment and was under Agent Caputo's direct supervision during the conduct of the search.[4]

The plaintiff was not present during the search, although at least one of his employees was present. The search lasted approximately two hours. The records kept at the plaintiff's apartment were somewhat disorganized, and the agents found it necessary to sift through several boxes of material. See Deposition of Thomas Kerrigan, October 5, 1984, at 16, 22–23, 35–37; Deposition of Victoria (Kaczynski) Dirienzo, October 5, 1984 at 8.

The agents seized and took possession of several items, including folders, books, checks, correspondence, ledgers, newspaper clippings, a bank book and bank records. These items were listed on an inventory form and stored with DRS. On February 27, 1979, plaintiff's attorney wrote to the Commissioner of DRS, demanding the return of several items seized by the agents. On February 28, 1979, the Commissioner responded that, upon advice of counsel, DRS would not release the requested materials unless such release was sanctioned by the superior court or requested by the Office of the State's Attorney.

On February 27, 1979, plaintiff also filed motions with the superior court requesting permission to inspect the seized materials and to suppress any evidence seized pursuant to the February 22nd search. On April 19, 1979, a hearing on these motions was held before Judge Borden of the superior court. Judge Borden ordered the DRS to allow plaintiff to inspect and copy the seized items. However, plaintiff's motion to suppress was not granted. Plaintiff was permitted to inspect and copy the seized materials pursuant to Judge Borden's order.

On February 24, 1981, the state charges against plaintiff for operating a business as a seller without a permit were nolled before Judge Reynolds. At the February 24th hearing, plaintiff requested the return of all items seized during the February 22, 1979, search. This request was denied by Judge Reynolds who indicated that he would be willing to reconsider upon motion at the end of the thirteen-month nolle period.

On November 9, 1982, plaintiff's counsel wrote to defendants' counsel, again requesting return of the seized material. On November 22, 1982, defendants' counsel responded by advising that plaintiff should proceed by filing a motion in the superior court, pursuant to Conn.Gen.Stat. § 54–36c and Judge Reynolds' February 24, 1981, order. Plaintiff did file such a motion on November 29, 1982, which motion was apparently granted in December, 1982. The plaintiff has made no attempt to take possession of the seized material although DRS has stated that it will release it to plaintiff if he chooses to claim it. The material in question has been submitted to this court by the defendants to aid in resolution of this motion.[5]

## II. Discussion

The plaintiff's complaint, as clarified by his response to the motion for summary judgment, can be viewed as seeking relief

---

4. By affidavit and deposition Mr. Kerrigan and Ms. Kaczynski testified that they conducted themselves according to the directions of their supervisors during the search.

5. The complaint seeks, inter alia, injunctive relief in the form of an order forbidding the defendants from withholding the seized property. Because the DRS is no longer holding the property against plaintiff's will, the request for injunctive relief is moot. Plaintiff may obtain this property by making appropriate arrangements with the clerk of this court. See Rule 14(b), Local Rules of Civil Procedure.

for three types of conduct engaged in by the defendants. First, plaintiff claims that the search warrant was invalid on its face because it failed to identify the items to·be seized with sufficient particularity. The defendants, under this theory, violated plaintiff's constitutional rights simply by attempting to execute a facially invalid warrant. Second, plaintiff claims that the defendants violated his constitutional rights during the execution of the warrant by seizing items not authorized by the warrant. Finally, plaintiff claims that Agent Kerrigan violated plaintiff's constitutional rights by not returning items which were illegally seized.[6]

 It is important to note what this case is *not* about. This case does not involve the suppression of evidence seized during the search. It also no longer involves a dispute over whether the DRS must return the seized materials. *See* note 5, *supra.* At this point this suit simply involves the recovery of damages from the two remaining defendants in their individual capacity.[7] As such, it is not necessary for this court to decide whether the search, seizure, and retention of property violated plaintiff's rights under the constitution. Because the undisputed facts show that the defendants are entitled to immunity from

**6.** The second count of the complaint alleges that Agent Kerrigan conspired with Internal Revenue Agent Stuart to unlawfully deprive plaintiff of his property after the criminal charges against plaintiff were nolled. However, it is undisputed that Agent Kerrigan ceased his employment with the DRS in July, 1979, and from that date onward could not exercise any control over the seized material. *See* Kerrigan Affidavit, ¶ 5; Deposition of Thomas Kerrigan at 4, 44. Furthermore, to the extent that retention of the seized material did not violate any "clearly established" constitutional rights, any agent retaining such property would be immune from suit. *See Harlow v. Fitzgerald,* 457 U.S. 800, 819, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). As will be discussed below, retention of plaintiff's property under the circumstances of this case did not violate plaintiff's clearly established constitutional rights.

**7.** The defendants have been sued in their official and personal capacities. It is now well established that a suit against a state official in his or her official capacity is, in actuality, a suit against the state. *Brandon v. Holt,* ── U.S. ──, ──, 105 S.Ct. 873, 877, 83 L.Ed.2d 878 (1985). It is equally clear that the doctrine of sovereign immunity embodied by the Eleventh Amendment precludes a suit for damages against a state brought under section 1983. *Edelman v. Jordan,* 415 U.S. 651, 677, 94 S.Ct. 1347, 1362, 39 L.Ed.2d 662 (1974). Accordingly, the suit against the defendants in their official capacity must be dismissed.

The defendants have put forth the novel argument that they are protected by the Eleventh Amendment in their individual capacity as well. The genesis of this immunity, defendants argue, lies in section 4–165 of the Connecticut General Statutes, which declares state employees immune from personal liability unless their actions are found to be wanton, reckless, or malicious. The statute goes on to provide a mechanism for presenting claims to the state for inju-

ry caused by state employees. The defendants argue that section 4–165 imposes liability upon the state for their actions, making the state the real party in interest, and hence, bringing this suit under the umbrella of the Eleventh Amendment.

To the extent that the defendants argue that the statute, by its terms, declares them immune from suit under section 1983, this argument is easily disposed of. Although a state may protect its employees from suit under state law, the supremacy clause prevents the state from shielding its employees when they violate federal law. *See Scheuer v. Rhodes,* 416 U.S. 232, 237, 94 S.Ct. 1683, 1687, 40 L.Ed.2d 90 (1974) ("When a state officer acts under a state law in a manner violative of the Federal Constitution ... '[t]he state has no power to impart to him any immunity from responsibility to the supreme authority of the United States.'") (quoting *Ex parte Young,* 209 U.S. 123, 160, 28 S.Ct. 441, 454, 52 L.Ed. 714 (1908)).

The defendants' argument that the statute imposes a financial burden on the state, and therefore brings the Eleventh ·Amendment into play, is also unavailing. First, the statute only imposes a burden upon the state if the plaintiff brings a claim against the state under the provisions of Chapter 52 of the Connecticut General Statutes. In this case, the plaintiff has not asserted such a claim. Furthermore, even if the state has voluntarily agreed to indemnify its employees against damage claims arising under federal law, such voluntary action cannot serve to oust the federal courts from their traditional role of guarding rights protected by the United States Constitution. *See Demery v. Kupperman,* 735 F.2d 1139, 1147 (9th Cir.1984); *Council of Commuter Organizations v. Metropolitan Transportation Authority,* 683 F.2d 663, 672 (2d Cir.1982). These defendants may not assert the immunity of their state employer to protect them from personal liability for violation of constitutional rights.

suit for damages, the action must be dismissed.

## A. Qualified Immunity [8]

The Supreme Court has long recognized that some form of immunity must be granted to government officials acting within the scope of their duties. *See Spalding v. Vilas*, 161 U.S. 483, 16 S.Ct. 631, 40 L.Ed. 780 (1896). In *Tenney v. Brandhove*, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951), the Court found that section 1983 did not abrogate the traditional immunity accorded to state legislators. Although the immunity granted in *Tenney* was an absolute immunity from suit, the Court held in *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) that all state executive officials were entitled to a "good faith" immunity from section 1983 suits. *Id.* at 247, 94 S.Ct. at 1692.

The "good faith" immunity recognized in *Scheuer* appeared to have both subjective and objective components. *Id.* at 247–48, 94 S.Ct. at 1692. *See Wood v. Strickland*, 420 U.S. 308, 322, 95 S.Ct. 992, 1000, 43 L.Ed.2d 214 (1975). However, in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Court reevaluated the policies supporting a qualified immunity for government officials and determined

that those policies could best be implemented by confining the analysis to the reasonableness of the defendant's actions without regard to his or her subjective beliefs or intent. *Id.* at 815–819, 102 S.Ct. at 2736–38. Under this new approach officials are qualifiedly immune from suit "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2738. Because an objective standard is utilized, questions of qualified immunity can readily be decided on summary judgment when the circumstances surrounding the officer's conduct is undisputed. *Id.* [9]

Although *Harlow* dealt with the immunity of federal officials, it soon became clear that the same standards apply to state officials. *Davis v. Scherer*, 468 U.S. 183, 104 S.Ct. 3012, 3018, 82 L.Ed.2d 139 (1984). *Davis* also made clear that a state official would only be subject to suit under section 1983 if his conduct violated clearly established federal rights. The violation of state law alone would not be sufficient to overcome an official's qualified immunity. *Id.* at 104 S.Ct. at 3020. Furthermore, state officials are not required to anticipate future court decisions, but may only be held liable if their actions violate federal rights

---

**8.** The term "qualified immunity" has often been used interchangeably with the term "good faith immunity." However, as will be discussed below, the recent trend of cases has virtually removed any subjective factors in determining whether a state official is immune from suit. Because the term "good faith" implies consideration of the state of mind of the official, it is best that the term "qualified immunity" be used to avoid confusion as to the type of analysis that must be employed in these cases.

**9.** The plaintiff has argued that the qualified immunity of *Harlow* does not apply in the instant case because that immunity only shields government officials in performing discretionary functions. 457 U.S. at 816, 102 S.Ct. at 2737. Plaintiff argues that an officer executing a warrant is not performing a discretionary function. In support of this position he quotes *Marron v. United States*, 275 U.S. 192, 197, 48 S.Ct. 74, 76, 72 L.Ed. 231 (1927) for the proposition that, in executing a warrant "nothing was to be left to the discretion of the executing officer." However, the quoted language has been criticized as sweeping too broadly, *see* 2 W. LaFave, Search

and Seizure, § 4.6(a) at 95–96 (1978), and defies common sense. In fact, the Second Circuit has said "some discretion must be given executing officials to interpret the words of every warrant no matter how particularly the items are described. . . ." *United States v. Marti*, 421 F.2d 1263, 1298 (1970). *See also United States v. Abrams*, 615 F.2d 541, 551 (Campbell, J. concurring) ("While this phrase [from *Marron* ] establishes a worthy ideal, the standard is utterly unreal, as commentators have recognized").

Plaintiff's claim that the officers were not performing a discretionary task is undermined by his own argument. He has insisted that the defendants should have refused to enforce the warrant because it failed to identify the items to be seized with particularity. This argument itself assumes that the defendants had the discretion to decide whether or not to obey the command of the warrant. The defendants must therefore be immune if their exercise of this discretion did not violate plaintiff's clearly established constitutional rights.

that were clearly established at the time of the challenged conduct. *Mitchell v. Forsyth,* —— U.S. ——, ——–——, 105 S.Ct. 2806, 2818–22, 86 L.Ed.2d 411 (1985).[10]

With this background the defendants' behavior may be analyzed to determine if they violated plaintiff's constitutional rights as those rights had been clearly established on February 22, 1979.

## B. *Execution of the Warrant*

The plaintiff's first claim is that his constitutional rights were violated when the defendants proceeded to execute the warrant. The plaintiff argues that the warrant's failure to particularize the items to be seized made the warrant invalid on its face. Because of the doctrine of qualified immunity, the defendants may only be sued if the warrant was so obviously invalid that a reasonable officer should have known that its execution would violate plaintiffs' rights under the Fourth Amendment.

When viewed in this light, there is little question but that the defendants are qualifiedly immune for their execution of the warrant. It is difficult for plaintiff to argue that the warrant was so obviously invalid as to remove the defendants' immunity from suit when three judges of the Connecticut Superior Court apparently determined that the warrant was not clearly defective. Judge O'Donnell reviewed the application and issued the warrant. Judge Borden refused to suppress evidence seized under the warrant. Judge Reynolds refused to order the return of plaintiff's property when his criminal case was nolled. In view of the fact that these three judges

did not immediately ascertain the facial invalidity of the warrant, it cannot be seriously contended that the executing officers should have known that the warrant violated plaintiff's constitutional rights. This is especially true in light of the language of the warrant "command[ing]" the officers to execute the warrant.[11]

The fact that Judge O'Donnell saw fit to approve the form of the warrant is alone sufficient to shield the executing officers from liability absent extraordinary circumstances. *United States v. Leon,* —— U.S. ——, 104 S.Ct. 3405, 82 L.Ed.2d 702 (1984) established a "good-faith" exception to the exclusionary rule in circumstances in which an officer executes a warrant which has been approved by a judicial officer. In *Leon* the Court noted the division of authority between the judicial officer, whose duty includes "issu[ing] a warrant comporting in form with the requirements of the Fourth Amendment," and the police officer who, in the ordinary case, "cannot be expected to question the magistrate's ... judgment that the form of the warrant is technically sufficient." *Id.* at ——, 104 S.Ct. at 3420. The Court concluded that "[p]enalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." *Id.*

The *Leon* court noted that there may exist circumstances in which the officer's reliance upon the warrant may not be objectively reasonable.[12] *Id.* at ——, 104 S.Ct. at 3421. However, given the "great deference" accorded a judicial officer's determination that a warrant has been prop-

**10.** The defendants have argued that, in order for plaintiff's rights to have been "clearly established" there must have been a decided controlling case on all fours with the instant case. It is not now necessary to decide the extent to which an earlier case must present an identical fact pattern before it can be said to clearly establish federal rights. As will be discussed below, there was a "legitimate question" concerning the degree of specificity required in a warrant and the scope of the officers' authority to seize items not explicitly enumerated in the warrant. *See Mitchell, supra,* —— U.S. at —— n. 12, 105 S.Ct. at 2820 n. 12.

**11.** " '[O]nce the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law.' " *United States v. Leon,* —— U.S. ——, 104 S.Ct. at 3420 (quoting *Stone v. Powell,* 428 U.S. 465, 498, 96 S.Ct. 3037, 3054, 49 L.Ed.2d 1067 (1976) (Burger, C.J., concurring).

**12.** The court implied that the "good faith" exception to the exclusionary rule would be coextensive with the "good faith" immunity standard announced in *Harlow v. Fitzgerald, supra.* 457 U.S. at 814 n. 23, 102 S.Ct. at 2736 n. 23.

erly issued, *id.* at ——, 104 S.Ct. at 3416, only the most glaring of defects can serve to strip an officer of his qualified immunity. *See Massachusetts v. Sheppard,* 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984).[13]

Plaintiff has argued that the manner in which the warrant identified the items to be seized, "sales files, order forms, inventory, purchase and sales records," constituted such a glaring defect. However, plaintiff has failed to cite a case in which a warrant similar to the one he attacks has been held to be invalid. Some of the cases cited by plaintiff, have declared warrants to be invalid which simply authorized "seizure of most every sort of book or paper at the described premises...." *Application of Lafayette Academy, Inc.,* 610 F.2d 1, 3 (1st Cir.1979).[14] However, a warrant authorizing seizure of "all folders ... all checks ... all general ledgers ... [and] all correspondence" was held to be sufficiently particularized by the same court three years later. *United States v. Christine,* 687 F.2d 749 (1st Cir.1982). Plaintiff argues that the warrant in *Christine* was saved by the use of the word *all* which prevented the executing officers from exercising discretion. However, in *Lafayette Academy,* the court had read in the word "all," but found the warrant too general nonetheless. 610 F.2d at 5–6. It can hardly be said that a reasonable officer in this case should have known that the validity of the search warrant hinged upon the omission or inclusion of the word "all" before each category of property listed in the warrant.

Given the deference that police officers are expected to accord the determinations of magistrates and judges, the warrant in question was not so clearly defective as to require these defendants to ignore its command that they conduct the search that the warrant purported to authorize.[15] Therefore the defendants are immune from suit for their execution of the warrant.

## C. *Seizures During the Search*

The plaintiff has argued that the defendant's seized items that were not properly

13. The *Sheppard* case is similar to the instant case in several aspects. As in the instant case, the officer seeking the warrant executed the affidavit supporting the application. The warrant proved to be defective in failing to describe particularly the items to be seized. The Court stated that "[w]hatever an officer may be required to do when he executes a warrant without knowing beforehand what items are to be seized, we refuse to rule that an officer is required to disbelieve a judge who has just advised him, by word and action, that the warrant he possesses authorizes him to conduct the search he has requested." *Id.* at ——, 104 S.Ct. at 3429 (footnote omitted). In the instant case, Agent Kerrigan prepared the affidavit and form of the warrant. He presented them to Judge O'Donnell who signed the warrant in Agent Kerrigan's presence. *See* Deposition of Thomas Kerrigan at 10–11. Under these circumstances Agent Kerrigan was entitled to believe that the warrant properly authorized him to conduct the search that he had requested in the application.

14. Even in this case upon which plaintiff so heavily relies, one judge noted "[i]n this era of expending [sic] white collar fraud, it may be that future court decisions will tend toward narrower interpretations of Fourth Amendment protections in this type of situation." *Id.* at 7 (Kunzig, J. concurring). *See also United States v. Abrams,* 615 F.2d 541, 549 (1st Cir.1980) (Campbell, J. concurring) ("The law is still largely unformed in this difficult area.")

The uncertainty in the law concerning the degree of particularity required in a search warrant authorizing seizure of business records can be seen by comparing the following cases: *Andresen v. Maryland,* 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976) (warrant valid); *United States v. Christine,* 687 F.2d 749 (1st Cir.1982) (warrant valid); *Geller v. Markham,* 635 F.2d 1027 (2d Cir.1980) (warrant valid); *United States v. Abrams,* 615 F.2d 541 (1st Cir.1980) (warrant invalid); *Application of Lafayette Academy, Inc.,* 610 F.2d 1 (1st Cir.1979) (warrant invalid); *In re Search Warrant,* 572 F.2d 321 (D.C.Cir.1977) (warrant valid); *United States v. Scharfman,* 448 F.2d 1352 (2d Cir.1971) (warrant valid); *United States v. Marti,* 421 F.2d 1263 (2d Cir.1970) (warrant invalid); *United States v. Zanche,* 541 F.Supp. 207 (W.D.N.Y. 1982) (warrant valid).

15. This determination is not meant to be an endorsement of the form of the warrant. The description of the items to be seized under the warrant was quite general, but given the nature of the crime under investigation and the inherent difficulty in clearly identifying records that have not previously been seen, the generality of the description did not violate plaintiff's constitutional rights as those rights were clearly established at the time of the search.

subject to seizure under the warrant or under any exceptions to the warrant requirement. Plaintiff has failed, however, to specify those items which he claims were improperly seized. Apparently, plaintiff's position rests upon the claimed invalidity of the warrant, so that all items seized were seized improperly because they were not identified with sufficient particularity.

This general argument that all items seized were seized improperly fails to impose liability upon these defendants for the reasons set out in the previous section. If these defendants are immune from suit for executing the warrant, they are immune also for seizing items that a reasonable officer would believe were authorized by the warrant.

Although the plaintiff has failed to specify which items he believes were improperly seized, the court has reviewed the seized materials that have been submitted to it to determine whether each was reasonably seized under the warrant or an exception to the warrant requirement. The court has also reviewed Agent Kerrigan's affidavit in which he explains why he believed that each item seized was covered by the warrant. After conducting this review the court is satisfied that seizure of each item did not violate plaintiff's clearly established constitutional rights. These defendants are therefore immune from suit for the seizures that occurred during execution of the warrant.[16]

Although the plaintiff has not explicitly attacked the seizure of particular items, a review of the questions asked by plaintiff's counsel at the depositions of Kerrigan and Kaczynski indicates that he questioned the authority for the seizure of certain items. The court will address the principle issues apparently raised in the depositions.

■ Plaintiff focused primarily on the seizure of checks from out-of-state banks and records of out-of-state sales. Plaintiff appeared to assert that because Connecticut only imposes a tax on in-state sales, seizure of materials reflecting out-of-state sales was improper. This argument fails for two reasons. First, although sales to persons outside of the State of Connecticut are not subject to sales tax, those sales must nevertheless be reported and a deduction is allowed for those sales. *See* Affidavit of Edward Bajorski, ¶¶ 6–9; Affidavit of William Wigglesworth, ¶ 13 and Exhibit B. *See also* Conn.Gen.Stat. § 12–414(3) (requiring the reporting of "gross receipts"). Second, evidence that an individual is selling goods outside of the state may be relevant to show that the individual is engaged in the business of selling. Such evidence, coupled with evidence of some sales occurring within the state, could be admissible to show that the individual is engaged in the business of selling within the State of Connecticut without a sales permit, in violation of Conn.Gen.Stat. § 12–409. *See Andresen v. Maryland,* 427 U.S. 463, 482–84, 96 S.Ct. 2737, 2749–50, 49 L.Ed.2d 627 (approving seizure of evidence not specifically authorized in warrant but relevant to proving the crime charged).

■ Plaintiff also appeared to challenge some other items as not being "sales files, order forms, inventory, [or] purchase and sales records." However, to the extent that these items are not clearly included within one of these categories, the officers could reasonably believe that they were subject to seizure under an exception to the warrant requirement. Most of these items were evidence of the crime under investigation and were subject to seizure under the "plain view" exception. *Texas v. Brown,*

---

**16.** Plaintiff has argued that the search was also conducted in an unreasonable manner because of the number of officers conducting the search and the length of time of the search. However, he has offered no evidence that either of these defendants had any part in determining the number of officers who would participate in the search. Furthermore, the depositions of defendants Kerrigan and Kaczynski demonstrate that the officers were required to peruse through several boxes of documents to find the sales records that were the objects of the search. These statements in the depositions are bolstered by the photographs of the search scene, Exhibit A, Affidavit of William Wigglesworth, which depict the mountains of paper that confronted the officers when the warrant was executed.

460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983); *Dale v. Bartels,* 732 F.2d 278, 284 (2d Cir.1984); *United States v. Bonfiglio,* 713 F.2d 932 (2d Cir.1983). A few other items, such as pieces of correspondence, were intermingled in files with evidence subject to seizure. Agent Kerrigan stated in his affidavit and deposition that these items were included in the seizure to maintain the integrity of the files as those files had been kept by plaintiff. Seizure of these few items under the circumstances of this case was analogous to the seizure of cash for safekeeping. Such special reasons for seizure have provided an established exception to the warrant requirement. *Dale v. Bartels, supra* (citing 2 LaFave, Search and Seizure § 4.1(b)). The defendants did not violate any clearly established constitutional rights so as to subject them to suit for seizing these items.

The plaintiff has argued that the plain view exception is inapplicable in this case because the discovery of materials not specifically identified in the warrant was not inadvertent. However, plaintiff has not provided the court with any basis for finding that the officers had probable cause to believe that they would find relevant materials in addition to "sales files, order forms, inventory, [and] purchase and sales records." *See United States v. Liberti,* 616 F.2d 34, 37 (2d Cir.1980), *cert. denied,*

446 U.S. 952, 100 S.Ct. 2918, 64 L.Ed.2d 808 (1980). Mere suspicion, without probable cause, that other evidence may be discovered, is insufficient to require that such other evidence be listed in the warrant. *Id.*

The defendants are therefore immune from suit for the manner in which the search and seizure was conducted.

### D. *Retention of the Property*

The final contention of the plaintiff is that the defendant Kerrigan violated his constitutional rights by retaining certain materials that were seized during the February 23, 1979, search.[17] Even assuming that such items were not within the scope of the warrant and were not evidence of the crimes for which plaintiff was charged, the defendant did not violate any of plaintiff's .clearly established constitutional rights by retaining the property. In fact, it appears that Mr. Kerrigan may have violated state law had he returned the property without a court order.

Following the seizure of the property on February 22, 1979, Agent Kerrigan filed an inventory with the Superior Court in Meriden, as required by Conn.Gen.Stat. § 54–36a(b)[18] Kerrigan Deposition at 17; Kerrigan Affidavit, Exh. C. Once the inventory has been returned to the court it appears that the property may only be returned by order of the court. *See* Conn.Gen.Stat.

17. There is no dispute that Ms. Kaczynski was not associated with the retention of the plaintiff's property. Her training period with the Special Investigations Section ended two days after the search and seizure. Plaintiff made no demand for the return of his property directed towards Ms. Kaczynski and Ms. Kaczynski did not have any control over the seized property after the completion of the search.

Mr. Kerrigan ceased working for the Special Investigations Section in July, 1979. The complaint, to the extent that it states a claim against Mr. Kerrigan for the wrongful retention of plaintiff's property, must therefore be construed as pertaining to the period from February 22, 1979, through July, 1979. *See* note 6, *supra.*

There is also undisputed evidence in the record that Mr. Kerrigan was without authority to return the property to plaintiff in any event. *See* Wigglesworth Affidavit, ¶ 16; Kerrigan Affidavit, ¶ 17; Kerrigan Deposition, pp. 36–37, 40. Nevertheless, the court will proceed under the

assumption that it was within Mr. Kerrigan's power to return the disputed property to the plaintiff.

18. Conn.Gen.Stat. § 54–36a(b) provides in pertinent part:

Whenever property is seized in connection with a criminal arrest or seized. pursuant to a search warrant, the law enforcement agency seizing such property shall file, on forms provided by the office of the chief court administrator, an inventory of the property seized. The inventory ... shall be filed with the clerk of the court for the geographical area in which the criminal offense is alleged to have been committed.

*See also,* Conn.Gen.Stat. § 54–33c: "The warrant shall be executed within ten days and returned with reasonable promptness consistent with due process of law and shall be accompanied by a written inventory of all property seized."

§ 54–33f (aggrieved person may move the court to order return of improperly seized property); § 54–36a(c) (return of seized property to be ordered by court at final disposition of criminal action). In fact, when plaintiff's attorney wrote to the State Tax Commissioner requesting the return of some of the seized property, he received an immediate response from Commissioner Dubno advising that "sanction of the court" was necessary for the release of the property. Plaintiff's attorney sought such sanction in the form of a motion to suppress, which motion was heard by Judge Borden and not granted. Plaintiff renewed his request for the return of his property when the charges were nolled before Judge Reynolds. Judge Reynolds specifically denied the request and suggested that the plaintiff renew his motion for return of the property after the thirteen-month nolle period had run. *See* Transcript, Feb. 24, 1981, attached as Exhibit A to Defendants' Memorandum In Support of Motion for Summary Judgment. Plaintiff did in fact renew his motion, which was eventually granted. *See* Exhibit D, Defendants' Memorandum In Support of Motion.

In light of the statutory requirement that a court order the return of seized property, and of the failure of two judges to issue such an order, it was reasonable for Agent Kerrigan to refuse to return any of plaintiff's property that had been listed in the inventory filed with the court. This is true even if Agent Kerrigan had reason to believe that some of the seized property would not be used in a criminal trial. Plaintiff had been made aware of the proper means to obtain the release of his property and Agent Kerrigan did not violate any clearly established constitutional rights by not returning plaintiff's property before plaintiff had obtained a court order.[19]

### III. *Conclusion*

The defendants are entitled to immunity from suit for their actions in executing the

---

**19.** The plaintiff has not directed the court to a single case holding that a law enforcement officer violates any constitutional rights by retaining possession of lawfully seized property after

search warrant, conducting the search and seizure, and retaining the seized property. The defendant's motion for summary judgment is granted and the action is dismissed.

SO ORDERED.

the warrant and inventory have been returned to the court and before final adjudication of the criminal charges.