ANDERSON v. MYERS et al. HOWARD v. SAME. BROWN v. SAME.

(Circuit Court, D. Maryland. October 28, 1910.)

1. ELECTIONS (§ 12\*)—CITIZENS—RIGHT TO VOTE—PERSONS OF COLOR.

Acts Md. 1908, c. 525, prescribing the qualifications of voters at municipal elections in the city of Annapolis, declares that the register shall register all male citizens of 21 years or over having resided in the city for one year, not convicted of a crime and assessed on the city tax books for at least $500, also all duly naturalized citizens of 21 years of age, all citizens who, prior to January 1, 1868, were entitled to vote in Maryland or any other state at a state election, and all lawful male descendants of any person who, prior to January 1, 1868, was entitled to vote in Maryland or in any other state of the United States at a state election, provided that no person not coming within one of the enumerated classes should be registered as a legal voter in the city or be qualified to vote at any municipal election held therein. *Held* that, though such act did not provide a race or color disqualification in terms, it nevertheless effectually disfranchised and discriminated against negroes, and was therefore unconstitutional as violating Const. U. S. Amend. 15.

[Ed. Note.—For other cases, see Elections, Cent. Dig. § 8; Dec. Dig. § 12.\*]

2. ELECTIONS (§ 104\*) — NEGROES — DISFRANCHISEMENT — LIABILITY OF ELECTION OFFICERS.

Where the registers of election of the city of Annapolis refused to register plaintiffs, who were negroes, and who were otherwise qualified voters, because they did not fulfill the qualifications of voters prescribed by Acts Md. 1908, c. 525, which act was unconstitutional in so far as it effected negro disfranchisement, plaintiffs were entitled to recover damages against defendants under Act Cong. April 20, 1871, c. 22, 17 Stat. 13 (Rev. St. § 1979; U. S. Comp. St. 1901, p. 1262), providing that every person who under color of any statute subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities, secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proceedings for redress, nor were complainants required to allege that defendants in refusing to register plaintiffs acted willfully or maliciously.

[Ed. Note.—For other cases, see Elections, Cent. Dig. § 102; Dec. Dig. § 104.\*]

3. ELECTIONS (§ 12\*)—CIVIL RIGHTS—RIGHT TO VOTE—NEGROES.

Const. U. S. Amend. 15, denying to the state the right to deprive any person of the right to vote on account of race, color, or previous condition of servitude, is not limited to congressional elections, but applies as well to the right to vote at state or municipal elections given by the state.

[Ed. Note.—For other cases, see Elections, Cent. Dig. § 8; Dec. Dig. § 12.\*]

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. STATUTES (§ 64*)—PARTIAL INVALIDITY.
Because Acts Md. 1908, c. 525, providing the qualifications of voters in municipal elections in the city of Annapolis, is invalid, as violating Const. U. S. Amend. 15, in so far as it is effective to prevent negroes from being registered and voting, does not render the law invalid in toto.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 59; Dec. Dig. § 64.*]

5 CONSTITUTIONAL LAW (§ 10*)—RIGHT TO VOTE—CONSTITUTIONAL AMENDMENT—POWER OF UNITED STATES.
Const. U. S. Amend. 15, forbidding discrimination on account of race or color, though construed as forbidding discrimination at state and municipal elections, does not render it objectionable in that, if so construed, it is beyond the power of the United States to so amend it.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 2–7; Dec. Dig. § 10.*]

Actions by John B. Anderson, William H. Howard, and Robert Brown against Charles E. Myers and A. Claude Kalmay for refusal to register complainants as qualified voters. On demurrer to plaintiffs' declarations. Overruled.

J. Wirt Randall, Edgar H. Gans, Edwin G. Baetjer, and Charles J. Bonaparte, for plaintiffs.
Wm. L. Rawls, Ridgely P. Melvin, and William L. Marbury, for defendants.

MORRIS, District Judge. The questions of law which are now before this court for its ruling have been raised by the defendants' demurrers to the declarations filed in three actions at law. They are suits for damages against the defendants, Myers and Kalmay, who were two of the registers upon whom, together with a third register, one Clarence M. Jones, was imposed the duty of registering the qualified voters at a special registration held in the city of Annapolis in the month of June, 1909. By the votes of the two registers who are defendants, the plaintiffs were denied registration; and in consequence their votes were refused by the judges of election for the reason that they were not entitled to vote because their names did not appear among the registered voters of the city of Annapolis.

The plaintiffs allege that they are natives of Maryland and lifelong residents therein who have been heretofore voters and continuously registered voters in Maryland. They allege that in obedience to the law of Maryland enacted at the January session (Acts 1908, c. 525), they were denied registration by the defendants, although in other respects they were legally qualified, solely because they were negroes and were discriminated against solely on that account; that the defendants as registers denied the plaintiffs registration, against the protest of the third registrar, wrongfully, illegally, and oppressively, and thus prevented the plaintiffs from voting at subsequent elections in the city of Annapolis.

The declarations allege that the action of said defendants as registers was in accordance with the said act of the Legislature of Maryland (chapter 525, Acts 1908), providing for the qualification of voters in municipal elections in the city of Annapolis, and providing for

---
*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the registration of said voters. By said act of 1908, the registers were directed to register: (1) All male citizens of Annapolis of 21 years or over who had resided therein over one year, who had never been convicted of any infamous crime, and who were taxpayers assessed on the city tax books for at least $500; (2) all duly naturalized citizens; (3) all male children of naturalized citizens of 21 years of age; (4) all citizens who, prior to January 1, 1868, were entitled to vote in the state of Maryland or any other state of the United States at a state election; and (5) all lawful male descendants of any person who, prior to January 1, 1868, was entitled to vote in Maryland or in any other state of the United States at a state election. And enacted that no person not coming within one of the enumerated classes should be registered as a legal voter of the city of Annapolis or be qualified to vote at any municipal election held in said city.

The several declarations then allege that so much of said act of Maryland as refuses registration and consequently the right to vote at municipal elections in the city of Annapolis to all persons or their descendants who were not entitled to vote in Maryland prior to January 1, 1868, is contrary to the Constitution and laws of the United States, and more especially to the fifteenth amendment to the Constitution and to the act of Congress approved May 31, 1870 (Act May 31, 1870, c. 114, 16 Stat. 140) constituting section 2004 of the United States Revised Statutes (U. S. Comp. St. 1901, p. 1272), in so far as the said clause of said law of Maryland of 1908 affects or professes or attempts to affect the right to vote of any citizen of the United States by reason of the race, color, or previous condition of servitude of himself or any ancestors of his.

The plaintiff Anderson alleges that he is a citizen of the United States, born in Anne Arundel county, Md., in 1834; that prior to January 1, 1868, he would have been entitled to vote at any election in Anne Arundel county but for the word "white" in the Constitution of Maryland then in force, restricting the right to vote to "white" citizens, by which restriction, being of the negro race and black color, and by reason of no other cause whatsoever, he was, prior to January 1, 1868, excluded from voting at municipal elections in the city of Annapolis.

The plaintiffs Howard and Brown allege substantially that their father and grandfather, respectively, would have been entitled to vote in Maryland except for the word "white" in the Maryland Constitution which was in force prior to January 1, 1868; that they have heretofore voted at municipal elections and were denied registration by the defendants acting as registers by reason of the provision of the Maryland law of 1908 solely and avowedly on account of their race and color. That is to say, because, in the case of Anderson, he could not on account of his race and color have voted prior to January 1, 1868; and, in the cases of Howard and Brown, because their father and grandfather, respectively, could not on account of race and color have so voted.

The plaintiffs all allege that in all other respects, except their race and color, the plaintiffs met all the requirements of the law entitling them to registration.

182 F.—15

To these declarations, the defendants have interposed a demurrer on the following grounds:

(1) That said declaration is insufficient in law and bad in substance.

(2) That said declaration fails to show any ground of jurisdiction in this honorable court over or in respect to the parties, matters, and things set forth therein.

(3) That by the laws under which they (the defendants) were appointed and acting, the defendants were charged with and exercising in respect to the transactions, matters, and things complained of and set forth in said declaration, duties, functions, and powers of a judicial nature; that in the discharge and exercise of said duties, functions, and powers, they (the defendants) were not and cannot be held legally responsible for anything more than an honest and faithful exercise of their judgment; and that said declaration fails to allege that the defendants or either of them did or failed to do any act to the prejudice or injury of the plaintiffs either willfully, maliciously, fraudulently, or corruptly, so as to render them or either of them legally liable to the plaintiffs in the premises.

(4) Because the declaration charges on its face that the act of the General Assembly of Maryland of 1908 (chapter 525), under which, as the declaration further avers, the defendants were appointed and acting, was and is illegal, unconstitutional, and void; and the declaration fails to show that the defendants were authorized to register or charged with any duty of registering the plaintiff at the time he presented himself for registration, as set forth in said declaration, under any other statute or law; that, therefore, upon the averments and charges of the declaration, the defendants had no authority and were charged with no duty to register the plaintiff when he presented himself to be registered, as set forth in the declaration, and, accordingly, are not legally liable to the plaintiff in the premises.

(5) Because the defendants are not subject or liable to any action for damages for refusing to register the plaintiff under said Acts 1908, c. 525, which, as charged and shown by the said declaration, forbade the defendants to register the plaintiff when he presented himself for registration, as set forth in said declaration, and which said act, as appears from its context, imposed criminal penalties upon the defendants for any violation of its terms and provisions.

(6) And for other reasons and grounds to be assigned at the hearing.

The demurrers having been set for hearing, the court has had the benefit of a very full oral presentation of the law by the able and distinguished counsel who have appeared for the plaintiffs and defendants, and who have also assisted the court by learned briefs.

1. The first proposition urged by the defendants is that the declarations are insufficient in law because they do not allege that the defendants acted willfully or maliciously in refusing registration to the plaintiffs.

It is true that, in refusing registration to the plaintiffs, the registers were acting in their official capacity, and that by the law of Maryland under which they were acting they were required to refuse regis-

tration to the plaintiffs. But, in my judgment, there are two considerations which affect this defense.

If the provision of the state law under which they acted in refusing registration is a void provision, it affords them no protection (Ex parte Siebold, 100 U. S. 371–376, 25 L. Ed. 717); and if, by a valid law of the United States, a right of action is given to the plaintiffs as a remedy for denial of registration, then their right of action is based upon such valid law and is referable to it and is governed by its terms.

The consideration of the question whether or not the provision of the Maryland law under and by virtue of which the plaintiffs were denied registration and, in consequence, denied the right to vote, is a valid provision, lies at the foundation of these suits and must of necessity be dealt with at the threshold.

By the fifteenth amendment to the Constitution of the United States proclaimed March 30, 1870, the following provisions became part of the Constitution of the United States and became the supreme law of the land:

"Section 1. The right of citizens of the United States to vote shall not be denied or abridged by the United States or by any state on account of race, color or previous condition of servitude.

"Sec. 2. The Congress shall have power to enforce this article by appropriate legislation."

Congress exercised the power thus given it by enacting the statute approved May 31, 1870, which is now section 2004 of the Revised Statutes, which reads as follows:

"Sec. 2004. All citizens of the United States who are otherwise qualified by law to vote at any election by the people of any state, territory, district, county, city, parish, township, school district, municipality, or other territorial subdivision, shall be entitled and allowed to vote at all such elections without distinction of race, color or previous condition of servitude; any Constitution, law, custom, usage or regulation of any state or territory or by or under its authority to the contrary notwithstanding."

And Congress by an act approved April 20, 1871 (chapter 22, 17 Stat. 13), now section 1979 of the Revised Statutes (U. S. Comp. St. 1901, p. 1262), further enacted:

"Sec. 1979. Every person who under color of any statute, ordinance, regulation, custom or usage of any state or territory, subjects or causes to be subjected any citizen of the United States, or other person within the jurisdiction thereof, to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

And also enacted clause 16 of section 629 of the Revised Statutes (U. S. Comp. St. 1901, p. 506), giving to the Circuit Courts of the United States original jurisdiction:

"Sixteenth. Of all suits authorized by law to be brought by any person to redress the deprivation under color of any law, statute, ordinance, regulation, custom or usage of any right, privilege or immunity secured by the Constitution of the United States or of any right secured by any law providing for equal rights of citizens of the United States or of all persons within the jurisdiction of the United States."

Prior to January 1, 1868, by the Constitution of Maryland, only "white" male citizens of the United States having the required length of residence were entitled to vote, and therefore, by the letter of the Maryland law, prior to January 1, 1868, the plaintiff Anderson, being a black man, was not entitled to vote; and Howard and Brown, not being descended from persons who, being white, were entitled to vote, were likewise not entitled to vote; and the defendants upon that ground solely denied to the plaintiffs registration.

Upon this state of facts and of the supreme law of the land, have not the defendants, contrary to that law, discriminated against the plaintiffs in the denying to them the right to vote because of their race and color; and have not the statutes enacted for that purpose given them a right of action?

It is true that the words "race" and "color" are not used in the statute of Maryland; but the meaning of the law is as plain as if the very words had been made use of; and it is the meaning, intention, and effect of the law, and not its phraseology, which is important. No possible meaning for this provision has been suggested except the discrimination which by it is plainly indicated.

This being so, what is the effect of the fifteenth amendment? It is declared by the Supreme Court to have the effect of obliterating from the statutes so much of their provisions as creates the forbidden discrimination. Neal v. Delaware, 103 U. S. 370, 26 L. Ed. 567.

In the case of United States v. Reese, 92 U. S. 214, 217, 218, 23 L. Ed. 563, Chief Justice Waite said:

"The fifteenth amendment does not confer the right of suffrage upon any one. It prevents the states, or the United States, however, from giving preference, in this particular, to one citizen of the United States over another on account of race, color, or previous condition of servitude. Before its adoption, this could be done. It was as much within the power of a state to exclude citizens of the United States from voting on account of race, etc., as it was on account of age, property, or education. Now it is not. If citizens of one race having certain qualifications are permitted by law to vote, those of another having the same qualifications must be. Previous to this amendment, there was no constitutional guaranty against the discrimination; now there is. It follows that the amendment has invested the citizen of the United States with a new constitutional right which is within the protecting power of Congress. That right is exemption from discrimination in the exercise of the elective franchise on account of race, color, or previous condition of servitude. This, under the express provisions of the second section of the amendment, Congress may enforce by 'appropriate legislation.'"

In Ex parte Yarborough, 110 U. S. 651, 664, 4 Sup. Ct. 152, 158 (28 L. Ed. 274), Mr. Justice Miller, speaking for the court, said:

"The fifteenth amendment of the Constitution, by its limitation on the power of the states in the exercise of their right to prescribe the qualifications of voters in their own elections, and by its limitation of the power of the United States over that subject, clearly shows that the right of suffrage was considered to be of supreme importance to the national government, and was not intended to be left within the exclusive control of the states."

And again:

"While it is quite true, as was said by this court in United States v. Reese, 92 U. S. 214,[1] that this article gives no affirmative right to the colored man

[1] 23 L. Ed. 563.

to vote, and is designed primarily to prevent discrimination against him whenever the right to vote may be granted to others, it is easy to see that, under some circumstances, it may operate as the immediate source of a right to vote. In all cases where the former slave-holding states had not removed from their Constitutions the words 'white man' as a qualification for voting, this provision did, in effect, confer on him the right to vote, because, being paramount to the state law, it annulled the discriminating word 'white,' and thus left him in the enjoyment of the same right as white persons. And such would be the effect of any future constitutional provision of a state which should give the right of voting exclusively to white people." Neal v. Delaware, 103 U. S. 370, 26 L. Ed. 567.

"In such cases the fifteenth article of amendment does, proprio vigore, substantially, confer on the negro the right to vote, and Congress has the power to protect and enforce that right."

That the fifteenth amendment has proprio vigore the effect of eliminating the qualifying adjective "white" from all state Constitutions and laws in fixing the qualifications of voters has been fully recognized by the Court of Appeals of Maryland in numerous cases. Shaeffer v. Gilbert, 73 Md. 66, 20 Atl. 434; Southerland v. Norris, 74 Md. 326, 22 Atl. 137, 28 Am. St. Rep. 255; Hanna v. Young, 84 Md. 179, 35 Atl. 674, 34 L. R. A. 55, 57 Am. St. Rep. 396; Pope v. Williams, 98 Md. 59, 56 Atl. 543, 66 L. R. A. 398, 103 Am. St. Rep. 379.

It is therefore apparent that, in enforcing the discriminating provisions of the state statute, the registers were doing and intended to do an act forbidden by the supreme law of the land and for doing which the state statutes could afford them no protection.

It is suggested in argument that if the clause in question of the Maryland statute is, by the fifteenth amendment, rendered invalid, the whole statute falls with it, and the registers had no power to register any one under it. This was held in Giles v. Harris, 189 U. S. 475, 23 Sup. Ct. 639, 47 L. Ed. 909, where the complainant alleged that the whole registration scheme of the Alabama Constitution was a fraud on the Constitution of the United States and void, and asked the court in an equity suit to so declare; at the same time, asking the court to decree that the complainant be registered. The court held that, if the complainant's contention was sustained and the whole scheme declared void, there was no warrant of law for registering him at all.

The plaintiffs make no such allegation or contention in this case. The law is recognized as valid in all its provisions except the one which discriminates; and the plaintiffs allege that, but for that discriminating clause, they would have been entitled to register.

We are now to consider whether it was a requisite of good pleading that the declaration should allege that the defendants acted willfully, maliciously, fraudulently, or corruptly in order to render them legally liable in these suits which are brought to enforce the statutory remedy given by section 2004 and section 1979.

It is to be observed that there can be no right of action under the fifteenth amendment and these sections of the Revised Statutes unless the discrimination and denial was in pursuance of a state law. Therefore, if the defendants' contention could be upheld, the defendant in such a suit could always plead that he did not act maliciously or willfully or in bad faith, because he was acting in obedience to the laws of the state.

The purpose of Congress in these sections is distinctly stated to be to give a right of action and an effective safeguard against deprivation of a right by the enforcing of a statute of the state; and when it says (section 1979) that "every person who, under color of any statute of any state, subjects or causes to be subjected any citizen of the United States to deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law," what can it mean but that the enforcement of the state law is of itself the wrong which gives rise to the cause of action? How could it be made to appear that the officer appointed to enforce a state law was guilty of malice in doing what the state law commanded him?

The common sense of the situation would seem to be that, the law forbidding the deprivation or abridgment of the right to vote on account of race or color being the supreme law, any state law commanding such deprivation or abridgment is nugatory and not to be obeyed by any one; and any one who does enforce it does so at his known peril and is made liable to an action for damages by the simple act of enforcing a void law to the injury of the plaintiff in the suit, and no allegation of malice need be alleged or proved.

There are restrictions of the right of voting which might in fact operate to exclude all colored men, which would not be open to the objection of discriminating on account of race or color. As, for instance, it is supposable that a property qualification might, in fact, result, in some localities, in all colored men being excluded; and the same might be the result, in some localities, from an educational test. And it could not be said, although that was the result intended, that it was a discrimination on account of race or color, but would be referable to a different test. But looking at the Constitution and laws of Maryland prior to January 1, 1868, how can it be said, with any show of reason, that any but white men could vote then? And how can the court close its eyes to the obvious fact that it is for that reason solely that the test is inserted in the Maryland act of 1908, and is not the court to take notice of the fact that, during all the 40 years since the adoption of the fifteenth amendment, colored men have been allowed to register and vote in Maryland until the enactment of the Maryland statute of 1908?

It was primarily the right of suffrage and its protection as against any discriminatory legislation of the states which was the subject-matter dealt with by the fifteenth amendment and the Revised Statutes; and, considering the purpose of the law, it does not seem that any other construction can be defensible. United States v. Reese, 92 U. S. 214–218, 23 L. Ed. 563.

It is urged by the defendants that the inhibitions of the fifteenth amendment against the denial of the right to vote of citizens of the United States on account of race or color must be held to apply only to the right to vote at congressional elections derived from the United States, and does not apply to the right to vote at state or municipal elections given by the state.

The fifteenth amendment was proclaimed March 30, 1870, and by the act of May 31, 1870, Congress undertook to exercise the powers

it understood were granted it by the amendment, and passed the act, now section 2004, providing expressly that all citizens of the United States otherwise qualified should be entitled and allowed to vote at all elections in any state, territory, county, or city, without distinction of race or color, any Constitution, law, custom, usage, or regulation of any state or territory to the contrary, notwithstanding.

Nothing in the way of interpretation by the legislative body which itself had framed the amendment could be more significant than this enactment passed by Congress immediately upon its adoption. I do not find in the cases cited from the Supreme Court anything opposed to that interpretation. It seems clear that when, by the fifteenth amendment, it is declared that the right of citizens of the United States to vote shall not be denied or abridged by any state on account of race or color, it means what Congress understood it to mean, namely, the right to vote at all public elections.

It is further urged by the defendants that, if the fifteenth amendment be construed as forbidding discrimination at state or municipal elections, it is beyond the power of the United States to so amend it; and therefore it should not receive that construction.

I do not appreciate the force of this contention.

That the amendment declaring all persons born in the United States to be citizens of the United States and of the state wherein they reside, without discrimination on account of race or color, is beyond the amending power, is not suggested; and, if so, it cannot be reasonably maintained that to declare that such citizens shall not be deprived of the privilege of suffrage because of race or color is beyond the amending power. One follows from the other.

It is my judgment that each of the declarations states a case in which the right of action is validly given by the Constitution and laws of the United States, and that the demurrers should be overruled.