**Mujahid FARID, Plaintiff–Appellant,**

v.

**Harold J. SMITH, Superintendent of the Attica Correctional Facility, Individually and in His Official Capacity, Defendant–Appellee.**

**No. 328, Docket 86–2007.**

United States Court of Appeals, Second Circuit.

Argued Oct. 14, 1987.

Decided June 22, 1988.

---

Clifford Peterson, New York City (George Felleman, Victoria Ortiz, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, of counsel), for plaintiff-appellant.

Christopher K. Hall, Albany, N.Y. (Robert Abrams, Atty. Gen. of the State of N.Y., Peter H. Schiff, Deputy Sol. Gen., William J. Kogan, Asst. Sol. Gen., Lew A. Millenbach, Asst. Atty. Gen., Albany, N.Y., of counsel), for defendant-appellee.

Before KEARSE, PIERCE, and PRATT, Circuit Judges.

PIERCE, Circuit Judge:

This is an appeal from a judgment of the United States District Court for the Western District of New York, John T. Curtin, Ch. J., granting summary judgment in favor of the defendant-appellee, Harold J. Smith, the former superintendent of the Attica Correctional Facility ("Attica"). In April, 1984, appellant Mujahid Farid, an inmate then serving a sentence at Attica, commenced an action pursuant to 42 U.S.C. § 1983 alleging that Smith had violated his constitutional rights by promulgating, promoting, and sanctioning various procedures carried out by officials working in the prison's package room. Farid in effect alleged that these procedures, which resulted in depriving him of certain items that prison officials had classified as contraband, violated (1) his right to a predeprivation notice and hearing, which, he asserts, is required by the fourteenth amendment, and (2) unspecified rights under the first and fourth amendments. For the reasons set forth below, we affirm in part, vacate in part, and remand for further proceedings.

## BACKGROUND

At issue herein are certain procedures, in place at Attica during the early 1980's, relating to inmate property rights. A memorandum issued in February, 1983, by Acting Superintendent H.J. Speckard sets forth Attica's policy in the following terms:

> From time to time an inmate will receive merchandise in a package which is not allowed into the facility. The inmate has three options. He may send the property home, give it to a charitable organization or have it destroyed. If the inmate leaves the package room without designating one of the above, it will be considered authorization for the facility to donate the property to a charitable organization.

In addition, the record suggests that any item of property confiscated from a prisoner's cell would be sent to the package room and be subject to the same disposition. Although a prisoner whose property was affected by this policy could file an "inmate grievance complaint" within six days of a deprivation, the record does not reveal that inmates were accorded any further opportunity to contest the deprivation.

The incidents giving rise to this action began in September, 1982, when prison au-

thorities confiscated a tape player which Farid had loaned to another prisoner, allegedly in violation of a state regulation prohibiting inmates from exchanging property with one another. Farid contends that he was called to the package room on September 20 and informed that he could send the tape player to someone outside the prison, or else have it destroyed. Farid declined to exercise either of these options, whereupon the tape player was donated to charity. Farid filed a grievance the following day, but he received no further hearing on the matter.

The next incident arose on March 20, 1983, when package room officials refused to deliver to Farid a package containing two books on Tarot and a deck of Tarot cards. According to Farid, the only reason he was given at the time was that the officers could not "remember this type of material [ever] being allowed in." Farid filed a grievance, and was given a hearing before a grievance committee. Although the committee recommended that a prison chaplain review the incident, Superintendent Smith denied the recommendation and declared the materials contraband. Farid subsequently commenced an action against Smith in state court, alleging that Smith had violated his due process, equal protection, and first amendment rights. On December 30, 1983, the state court entered judgment for Farid, holding (1) that Farid was entitled to possession of the Tarot materials; (2) that the "policies and practices" denying him the materials were unconstitutional; and (3) enjoining Smith from interfering with Farid's efforts to obtain the materials. However, the Tarot books and cards were never turned over to Farid.

Four other incidents took place during 1983 and 1984. On July 23, 1983, prison officials confiscated a set of Everlast exercise gloves uncovered during a search of Farid's cell. Once again, Farid filed a grievance; this time, his grievance was dismissed on the ground that the gloves were "state property." On February 13, 1984, the package room personnel refused to allow Farid to receive a package containing a cassette tape. On March 27, 1984, officials confiscated a pair of pajamas, two pens,

and a nail clipper from Farid's cell. Although the pens and the clipper were returned, the pajamas were donated to charity when Farid refused to designate anyone to whom they should be sent. Finally, on August 22, 1984, a package room official refused to allow Farid to receive a package containing a clock. Like the other items, the clock was donated to charity.

In April, 1984, Farid commenced this action pursuant to 42 U.S.C. § 1983 against Smith in his individual and official capacities, alleging that he had been deprived of the foregoing items of property without due process of law. Farid sought a declaratory judgment stating that Smith's acts, policies, and procedures as described in the complaint infringed on Farid's rights under the first and fourteenth amendments. Farid also sought compensatory and punitive damages in the amount of $25,000. Upon consideration of the parties' cross-motions for summary judgment, Chief Judge Curtin granted summary judgment in favor of Smith. This appeal followed.

## DISCUSSION

### I. *Eleventh Amendment Immunity*

Smith contends on appeal that the State of New York would be required to pay any damages awarded to Farid, and that the action is therefore barred by the eleventh amendment. In addition, Smith claims that the eleventh amendment bars Farid's action for a declaratory judgment because Attica's mailroom policy during the period at issue is no longer in effect. We are compelled to address these issues on appeal, even though Smith did not raise the eleventh amendment defense before the district court. *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 466–67, 65 S.Ct. 347, 351–52, 89 L.Ed. 389 (1945).

### A. The Damages Claim

] We consider first the effect of the eleventh amendment defense on the claim for damages. Absent a waiver on the part of the state, or a valid congressional override, the eleventh amendment prohibits federal courts from entertaining suits by pri-

vate parties against the states. *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 3106 n. 14, 87 L.Ed.2d 114 (1985). The eleventh amendment also bars suits against state officials and state agencies if the state is the *real* party in interest, regardless of whether the state is named as a party to the action. *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974). Accordingly, when a state official is named as a party to a litigation, as here, the court must determine whether the action is in reality a suit against the state itself. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 101, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984) (*"Pennhurst II"*). When the state itself, rather than the state employee whose name appears in the caption, is the real party in interest, the suit is said to be brought against the employee in his "official capacity." The eleventh amendment bars recovery against an employee who is sued in his official capacity, but does not protect him from personal liability if he is sued in his "individual" or "personal" capacity. *Graham*, 473 U.S. at 166–67, 105 S.Ct. at 3105–06. "Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself." *Id.* at 166, 105 S.Ct. at 3105.

In the present case, we conclude that, although the eleventh amendment bars Farid from prosecuting the damages action against Smith in his official capacity, it does not bar Farid from pursuing this action against Smith in his individual capacity. Smith's argument that this action can *only* be characterized as an official-capacity suit, because the mailroom policy at issue was promulgated by the State of New York rather than by Smith personally, is not persuasive. First of all, Smith has presented no evidence in support of his assertion that the State of New York promulgated the policy at issue in this case. More importantly, however, for the reasons that follow we conclude that even if Smith *were* to prove that he was merely carrying out a policy of the State, he would not be protected from personal liability by the State's immunity under the eleventh amendment.

As the Supreme Court has noted, "an agent's liability for torts committed by him cannot be avoided by pleading the direction or authorization of the principal. The agent is himself liable whether or not he has been authorized or even directed to commit the tort." *Pennhurst II*, 465 U.S. at 113 n. 23, 104 S.Ct. at 915 n. 23. Accordingly, the Court has consistently held that the eleventh amendment does not protect state officials from personal liability when their actions violate federal law, even though state law purports to require such actions. Indeed, as Justice Frankfurter once noted, during the seventy years which followed the enactment of the original Civil Rights Act in 1866, every case before the Supreme Court in which the "under color of state law" provisions were invoked "involved action taken either in strict pursuance of some specific command of state law or within the scope of executive discretion in the administration of state laws." *Monroe v. Pape*, 365 U.S. 167, 213, 81 S.Ct. 473, 498, 5 L.Ed.2d 492 (1961) (footnotes omitted) (Frankfurter, J., dissenting), *overruled in part on other grounds, Monell v. Department of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). For example, in *Myers v. Anderson*, 238 U.S. 368, 35 S.Ct. 932, 59 L.Ed. 1349 (1915), *aff'g* 182 F. 223 (C.C.D.Md.1910), three black citizens of the State of Maryland filed an action for damages, under the predecessor statute to 42 U.S.C. § 1983, against two election officials of the City of Annapolis who refused to allow the blacks to register to vote in a municipal election. The complaint charged that the election officials, who complied with a state law that effectively restricted the franchise to whites, violated the black citizens' right to vote under the fifteenth amendment. Although the election officials argued that they could not be liable for actions undertaken in conformity with the state statute, the Supreme Court affirmed the denial of their demurrer to the complaint. *See* 238 U.S. at 378–79,

35 S.Ct. at 934; 182 F. at 226–30. *See also Guinn v. United States,* 238 U.S. 347, 35 S.Ct. 926, 59 L.Ed. 1340 (1915) (upholding criminal conviction of Oklahoma election officers under predecessor to 42 U.S.C. § 1985(3) for depriving blacks of the right to vote, in conformity with Oklahoma law but contrary to the fifteenth amendment); *Belknap v. Schild,* 161 U.S. 10, 18, 16 S.Ct. 443, 443, 40 L.Ed. 599 (1896) (sovereign immunity of federal government did not protect federal officers and agents from being personally liable to private persons whom they injured under authority of the United States); *McGahey v. Virginia,* 135 U.S. 662, 10 S.Ct. 972, 34 L.Ed. 304 (1890) (permitting action against state officer who, acting pursuant to state law that allegedly violated the contract clause, U.S. Const. art. I, § 10, cl. 1, refused to accept bonds issued by state government and thereafter seized taxpayer's property to satisfy tax liability); *Poindexter v. Greenhow,* 114 U.S. 270, 285–90, 5 S.Ct. 903, 911–14, 29 L.Ed. 185 (1885) (eleventh amendment did not protect Virginia state treasurer in detinue action, where treasurer acted in conformity with unconstitutional state law); *Osborn v. Bank of United States,* 22 U.S. (9 Wheat.) 738, 839, 6 L.Ed. 204 (1824) (Marshall, C.J.) (void act does not afford protection to the person who executes it); *Cohens v. Virginia,* 19 U.S. (6 Wheat.) 264, 403, 5 L.Ed. 257 (1821) (Marshall, C.J.) (suggesting that if a state, in violation of federal treaty, confiscated a person's land, the injured party would have remedy against the occupant of the land); *Little v. Barreme,* 6 U.S. (2 Cranch) 170, 179, 2 L.Ed. 243 (1804) (Marshall, C.J.) (naval officer liable in tort for unlawful seizure of ship despite having acted in accordance with presidential order). *See generally* Amar, *Of Sovereignty and Federalism,* 96 Yale L.J. 1425, 1486 (1987) ("John Marshall's opinion in *Cohens v. Virginia* seemed to imply that full vindication of constitutional rights against the states might not require affirmative suits against the state; individual rights … might be fully protected by affirmative suits against individual officers in their private capacity, and by the ability of citizens to invoke constitutional rights defensively in suits brought *by* states.") (emphasis in original); Casto, *Innovations in the Defense of Official Immunity Under Section 1983,* 47 Tenn.L.Rev. 47, 61–63 (1979).

In our view, the foregoing cases still retain their vitality even in light of the somewhat different eleventh amendment jurisprudence the Supreme Court has announced in its more recent decisions. The cases cited above rest on an *ultra vires* doctrine best exemplified by the landmark decision in *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). In *Young,* a case in which a state official challenged a federal court's authority to enjoin him from enforcing a state law that allegedly conflicted with the fourteenth amendment, the Supreme Court held that the eleventh amendment did not prohibit the federal court from issuing the injunction, on the theory that an unconstitutional enactment is void and therefore does not "impart to [the officer] any immunity from responsibility to the supreme authority of the United States." *Id.* at 160, 28 S.Ct. at 454. In recent years, however, a majority of the Supreme Court has grounded its eleventh amendment decisions "in principles of federalism, eschewing the agency concepts that underlay [the] *ultra vires* theory." Althouse, *How to Build a Separate Sphere: Federal Courts and State Power,* 100 Harv.L.Rev. 1485, 1519 (1987) (citing *Pennhurst II,* 465 U.S. at 100, 104 S.Ct. at 908 (quoting *Hutto v. Finney,* 437 U.S. 678, 691, 98 S.Ct. 2565, 2573, 57 L.Ed.2d 522 (1978))). Thus, in resolving eleventh amendment issues, the Court has assessed the competing interests of federal and state law. In some instances, such as when a plaintiff seeks to recover damages from a state treasury, these interests conflict, and "the need to promote the supremacy of federal law must be accommodated to the constitutional immunity of the States." *Pennhurst II,* 465 U.S. at 105, 104 S.Ct. at 910. "[W]hen a plaintiff alleges that a state official has violated *state* law," however, "this need to reconcile [the] competing interests [of federal and state law] is wholly absent." *Id.* at 106, 104 S.Ct. at 911 (emphasis in original). In such

a case, the eleventh amendment bars federal jurisdiction because a federal injunction would "not vindicate the supreme authority of federal law." *Id.* By the same token, we believe that the need to reconcile competing interests is wholly absent when a plaintiff, alleging that a state official in carrying out state policy has violated federal law, institutes a federal personal-capacity action against the state official. In such a case *only* the federal interest in the supremacy of federal law is implicated, because the state treasury is not at risk. Moreover, the law is clear that a state's voluntary decision to indemnify its public servants does not transform a personal-capacity action against a state official into an official-capacity action against the state. *See, e.g., Duckworth v. Franzen,* 780 F.2d 645, 650 (7th Cir.1985), *cert. denied,* 479 U.S. 816, 107 S.Ct. 71, 93 L.Ed.2d 28 (1986); *Wilson v. Beebe,* 770 F.2d 578, 588 (6th Cir.1985); *Schiff v. Kerrigan,* 625 F.Supp. 704, 707 n. 7 (D.Conn.1986); *Group Health Inc. v. Blue Cross Ass'n,* 625 F.Supp. 69, 76 (S.D.N.Y.1985), *appeal dismissed,* 793 F.2d 491 (2d Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 1566, 94 L.Ed.2d 758 (1987).

In addition, we believe that neither the Supreme Court's decision in *Edelman v. Jordan,* nor this court's decision in *Jones v. Smith,* 784 F.2d 149 (2d Cir.1986), are to the contrary. In *Edelman,* the Court held that the eleventh amendment barred the plaintiffs from obtaining a judgment for benefits that had been wrongfully withheld from them under Illinois law. 415 U.S. at 658–59, 94 S.Ct. at 1353–54. As the Supreme Court has subsequently pointed out, however, "the case was in effect a suit against the State itself," rather than against the state officials personally, "because a judgment payable from state funds was demanded." *Cory v. White,* 457 U.S. 85, 90, 102 S.Ct. 2325, 2328, 72 L.Ed.2d 694 (1982). Similarly, in *Jones v. Smith* this court held that the eleventh amendment barred the plaintiff, another Attica inmate, from recovering damages resulting from an allegedly unconstitutional prison policy that restricted inmates from receiving postage-due mail. Although some of the language of *Jones* appears to suggest that the eleventh amendment protects from personal liability a state official who acts in accordance with state law, we doubt that the *Jones* court intended this result. None of the authorities cited by the court in *Jones* stands for the proposition that state officials cannot be personally liable for carrying out an unconstitutional state policy. *See Jones,* 784 F.2d at 152 (citing *Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Brandon v. Holt,* 469 U.S. 464, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985); and *Edelman v. Jordan).* Moreover, in our view such a result would have been contrary to controlling Supreme Court case law, as noted above.

To summarize, we hold that regardless of whether the mailroom policy at issue in this case was promulgated by the State Department of Corrections or by Superintendent Smith, Smith cannot invoke the eleventh amendment to protect himself from personal liability under § 1983. We suspect, however, that in most instances an official who complies with an unconstitutional state law will be protected from personal liability by an applicable personal defense, such as absolute or qualified immunity or lack of personal involvement. For example, the defense of qualified immunity may shield a state official who acts under the authority of an unconstitutional state law; in most instances, compliance with state law is unlikely to violate clearly established federal law, since most state laws are not patently unconstitutional. The eleventh amendment, however, is a defense only in official-capacity actions, *see, e.g., Graham,* 473 U.S. at 167, 105 S.Ct. at 3106, such as when a plaintiff seeks retroactive equitable relief or damages payable directly from the state, *see, e.g., Edelman,* 415 U.S. at 664–69, 94 S.Ct. at 1356–59. Therefore, to the extent that the present action is directed against Smith in his individual capacity, the eleventh amendment is not a valid defense.

**B. The Declaratory Judgment**

Smith also urges on appeal that Farid's action for a declaratory judgment is barred

by the eleventh amendment. In support of this proposition, Smith contends that, at least since November, 1984, New York prisons have been required to provide inmates with a thirty-day grace period within which to decide whether to dispose of disallowed articles of property or to commence a grievance procedure. Smith therefore concludes that Farid is challenging a mailroom policy that no longer exists, and that under *Green v. Mansour*, 474 U.S. 64, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985), the action for declaratory relief is barred by the eleventh amendment.

We do not agree that the eleventh amendment bars Farid's action for a declaratory judgment. In *Green*, the Supreme Court held that the eleventh amendment bars a federal court from issuing a judgment declaring that a state policy no longer in effect is contrary to federal law, when such a judgment would be useful "only if it might be offered in state-court proceedings as res judicata on the issue of liability, leaving the state courts only a form of accounting proceeding where damages or restitution would be computed." *Id.* at 73, 106 S.Ct. at 428. In such a situation, "the issuance of a declaratory judgment ... would have much the same effect as a full-fledged award of damages or restitution by the federal court" against the state. *Id.*

█ In the present case, however, Smith has presented no evidence in support of his claim that the policy of which Farid complains was a policy of the state; nor has he demonstrated that the policies in effect from 1982 to 1984, whatever they were, are no longer followed today. Moreover, even if the policy that is the subject of Farid's complaint was a policy of the state that is no longer in effect, a declaratory judgment could be entered against Smith in his personal capacity. Of course, we express no opinion as to whether an award of declaratory relief would be an appropriate exercise of the court's discretion in the present case. *See id.* at 72, 106 S.Ct. at 428 (although declaratory relief *may* be granted regardless of whether other relief is or could be sought, decision to grant a declaratory judgment is within the discretion of the district court).

## II. *Smith's Motion for Summary Judgment*

Given the absence of any eleventh amendment obstacle to our assertion of jurisdiction in this case, we now turn our attention to the merits of Farid's appeal. Under Fed.R.Civ.P. 56(c), summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Where, as here, the burden of persuasion at trial would be on the non-moving party (Farid), the party moving for summary judgment may satisfy his burden of production under Rule 56 in either of two ways: (1) by submitting evidence that negates an essential element of the non-moving party's claim, or (2) by demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331, 106 S.Ct. 2548, 2557, 91 L.Ed.2d 265 (1986) (Brennan, J., dissenting). We conclude that summary judgment was appropriate in the present case only if appellee either negated an essential element of Farid's due process and first amendment claims, or demonstrated that the evidence submitted by Farid was insufficient as a matter of law.

### A. Due Process

█ To resolve a procedural due process claim, a court must determine whether the plaintiff was deprived of a protected interest, and, if so, what process he was due. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428, 102 S.Ct. 1148, 1153, 71 L.Ed.2d 265 (1982). To determine the nature of the process due a court must consider (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural

safeguards; and (3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976); *Jones & Laughlin Pension Plan v. LTV Corp.,* 824 F.2d 197, 201 (2d Cir.1987).

■■■ Turning first to the element of deprivation, we note that mere *negligence* does not deprive an individual of life, liberty, or property under the fourteenth amendment. *Daniels v. Williams,* 474 U.S. 327, 330–31, 106 S.Ct. 662, 664–65, 88 L.Ed.2d 662 (1986). In the present case, however, Farid is challenging the *policy* that gave him the choice of having his property sent away pending the filing of a grievance complaint, or having it destroyed. Since the promulgation of this policy was an *intentional* act, it seems evident that Farid has suffered a deprivation. Similarly, there can be no dispute that Farid had a property interest in the items confiscated, even if some of them were of minimal value. *See, e.g., Parratt v. Taylor,* 451 U.S. 527, 536, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981) (hobby kit worth $23.50, lost in a prison mailroom before reaching inmate, fell within definition of property for fourteenth amendment purposes), *overruled in part on other grounds, Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662.

■■■ Turning next to the element of process, we note that Farid has submitted evidence indicating (1) that package room officials forced him to choose almost immediately whether certain items alleged to be contraband should be sent away, donated to charity, or destroyed; and (2) that subsequent to each incident Farid filed post-deprivation grievance petitions which were routinely denied. Therefore, the issue before the district court was whether a rational jury could infer from this evidence that Farid was accorded insufficient process under the *Mathews v. Eldridge* balancing test. The district court did not address this issue, but rather held that Farid *was* accorded due process because Attica's regulations give inmates thirty days to decide how to dispose of alleged contraband items. However, the only "evidence" that Attica has such a policy is to be found in the addendum to appellee's memorandum of law in support of his motion for summary judgment. Without addressing whether this addendum was properly before the district court, it suffices to note that the addendum only describes prison policy as of November 28, 1984. As a result, the only evidence of Attica's mailroom policy during the earlier time period at issue in this case was the evidence submitted by Farid, as described above. We realize, of course, "that prison officials have broad administrative and discretionary authority over the institutions they manage." *Hewitt v. Helms,* 459 U.S. 460, 467, 103 S.Ct. 864, 869, 74 L.Ed.2d 675 (1983). Nevertheless, given the current state of the record, we are constrained to remand with instructions that the district court consider whether the evidence submitted by Farid on the issue of due process is sufficient under *Mathews v. Eldridge* to withstand Smith's motion for summary judgment.

### B. First Amendment

■■■ Although prison inmates retain some protections afforded by the first amendment, "prison regulations alleged to infringe constitutional rights are judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *O'Lone v. Estate of Shabazz,* — U.S. ——, 107 S.Ct. 2400, 2404, 96 L.Ed.2d 282 (1987) (citing *Jones v. North Carolina Prisoners' Labor Union,* 433 U.S. 119, 128, 97 S.Ct. 2532, 2539, 53 L.Ed. 2d 629 (1977)). Therefore, a prison regulation that impinges on inmates' constitutional rights may be valid if it is reasonably related to legitimate penological interests. *Id.* In the present case, however, Smith has yet to articulate with record evidence a legitimate penological interest in denying Farid the Tarot books and the cassette tape. The district court reasoned that the deprivation of the cassette tape was justified because (1) the tape was not commercially made, sealed, or received directly from the company; and (2) unsealed tapes

might contain information relating to proposed escapes. This justification may very well be true, but the superintendent has not yet produced any evidence that the tape did not conform to regulations; his memorandum of law in support of summary judgment states that the tape did not conform, and sought to have the district court accept this unsworn statement as true, which it did. In absence of any evidence that the tapes were nonconforming, the court could not have concluded that the deprivation of the books and cassette was permissible under the first amendment.

On appeal, Farid also claims that the deprivation of the Tarot cards violated his first amendment right to freedom of religion. We do not believe, however, that Farid has properly pleaded or presented any evidence that the deprivation of the Tarot cards violated such a first amendment right. To assess a free exercise claim, a court must determine (1) whether the practice asserted is religious in the person's scheme of beliefs, and whether the belief is sincerely held; (2) whether the challenged practice of the prison officials infringes upon the religious belief; and (3) whether the challenged practice of the prison officials furthers some legitimate penological objective. *Kent v. Johnson,* 821 F.2d 1220, 1224–25 (6th Cir.1987); *Hill v. Blackwell,* 774 F.2d 338, 342–43 (8th Cir. 1985). Because Farid has neither alleged nor submitted any proof that he sincerely holds to any religious belief that mandates the use of Tarot cards, we conclude that summary judgment was appropriate on the free exercise claim.

### C. Qualified Immunity

As a general rule, state officials are shielded from liability for civil damages in § 1983 actions insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In the present case, the district court ruled, in the alternative, that Smith was protected from liability because he had acted in

"good faith." It is not clear, however, whether the court meant that Smith had demonstrated *objective* good faith, in the sense that he did not violate clearly established law, or subjective good faith, which is not relevant to the issue of qualified immunity. On remand, the court should consider whether Smith violated clearly established law. The court should consider, among other things, the extent to which, if at all, the article 78 judgment reflected law that was already clearly established, or itself clearly established the law relating to inmates' due process rights. We express no opinion on this matter.

### CONCLUSION

In light of the foregoing considerations, we hold that Farid's action against Smith in his individual capacity, which seeks damages and declaratory relief, is not barred by the eleventh amendment. In addition, because the district court applied the wrong legal standards, we hold that summary judgment was improperly granted with respect to the claims of due process and first amendment violations, except for the free exercise claim. We therefore affirm as to the free exercise claim; vacate the remainder of the judgment; and remand for further proceedings consistent with this opinion.

KEARSE, Circuit Judge, concurring:

I concur in the result and in much of the reasoning of the majority opinion but write separately principally to emphasize what I believe need not be litigated with respect to certain issues on remand. As the majority opinion notes, in December 1983, Farid obtained a judgment against Smith in state court "holding (1) that Farid was entitled to possession of the Tarot materials; (2) that the 'policies and practices' denying him the materials were unconstitutional; and (3) enjoining Smith from interfering with Farid's efforts to obtain the materials." *Ante* at 920. Apparently there is no question that the same policies are at issue here, for the latest alleged deprivation occurred in August 1984, and Smith's brief on appeal states that the policies in effect in 1982–

1984 were revised in November 1984. Thus, the state court judgment has a number of res judicata effects for the present action.

First, to the extent that Farid here seeks a declaratory judgment that the policies are unconstitutional or seeks equitable relief with respect to the Tarot materials, his claim is precluded. *E.g.,* Restatement (Second) of Judgments § 18 (1982). He has litigated these rights and obtained a judgment; if the rights already recognized have not been honored, his proper recourse is to return to state court and seek enforcement of his judgment, not to seek a new judgment to the same effect in federal court.

Second, to the extent that Farid seeks damages, his present claims are not barred by the state court judgment because that judgment was obtained in an Article 78 proceeding, in which the state court lacked the plenary power to award damages. *See* N.Y.Civ.Prac.L. & R. 7806 (McKinney 1981); *Schwab v. Bowen,* 41 N.Y.2d 907, 908, 394 N.Y.S.2d 616, 617, 363 N.E.2d 341 (1977); *Leisner v. Bahou,* 97 A.D.2d 860, 861, 469 N.Y.S.2d 255, 258 (3d Dep't 1983), *appeal dismissed,* 61 N.Y.2d 985, 475 N.Y. S.2d 282, 463 N.E.2d 623, *cert. denied,* 469 U.S. 1087, 105 S.Ct. 595, 83 L.Ed.2d 704 (1984). Since the power to award damages was limited, Farid did not have an adequate opportunity to litigate damages claims, and the state court judgment does not preclude their litigation in this action. *See David-son v. Capuano,* 792 F.2d 275 (2d Cir.1986).

Third, even with respect to Farid's claims for damages, the state court judgment holding these policies unconstitutional precludes relitigation of the issue of the constitutionality of the policies. The district court is required to give effect to the state court's ruling that they are unconstitutional. *Migra v. Warren City School District Board of Education,* 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984); 28 U.S.C. § 1738 (1982) (judgments of a state court "shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State"); *Petrella v. Siegel,* 843 F.2d 87, 90 (2d Cir.1988); *see*

*Smith v. Russell Sage College,* 54 N.Y.2d 185, 192–93, 445 N.Y.S.2d 68, 71, 429 N.E.2d 746 (1981).

Finally, though the December 1983 state judgment is not res judicata as to damages issues other than the constitutionality of the policies, two facts make that judgment quite significant with respect to any assertion by Smith in the present case of a defense of qualified immunity from an award of damages. Such a defense must be rejected if the defendant's action violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitz-gerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The facts that the judgment (a) was against Smith and (b) held unconstitutional the very policies at issue here would seem to be a clear impediment to any grant of immunity.