**Andrew CURRO, Plaintiff,**

v.

**Carolyn WATSON, Alan Finkelstein, Anita Ascolese, and Delores Ryan, Defendants.**

No. 86–CV–2501 (JS).

United States District Court, E.D. New York.

April 28, 1995.

Andrew Curro, Attica, NY, pro se.

Atty. Gen. of the State of New York by Ronald Turbin, Asst. Atty. Gen., New York City, for defendants.

New York City Department of Corrections, Legal Division by George Axelrod, New York City, for nonparty under Subpoena.

## MEMORANDUM AND ORDER

SEYBERT, District Judge:

Plaintiff Andrew Curro, proceeding *pro se,* brings this action pursuant to 42 U.S.C. § 1983 to recover damages from four New York State court reporters. Plaintiff alleges that the defendants deliberately altered the transcript of his criminal trial. This matter is now before the Court on four separate motions. First, plaintiff moves, pursuant to Rule 37(a) of the Federal Rules of Civil Procedure, for an order directing, *inter alia,* the prosecutor at his trial to disclose certain information relative to the testimony therein of the plaintiff's brother. Second, plaintiff moves, again pursuant to Fed.R.Civ.P. 37(a), for an order compelling the Brooklyn House of Detention for Men, a nonparty to this action, to produce its Inmate Law Library Log relative to the plaintiff for the period between February 26, 1985 and January 26, 1986. Third, defendants move for summary judgment pursuant to Rule 56(b) of the Federal Rules of Civil Procedure. Finally, plaintiff cross-moves to estop the defendants from relitigating issues of law that were resolved earlier in the chronology of this case, upon motions to dismiss, before another judge of this Court.

### FACTUAL BACKGROUND

Plaintiff is currently an inmate at the Attica Correctional Facility, in Attica, New York, where he is serving a sentence upon his conviction for second degree murder in New York State Supreme Court, Kings County, following a trial in October and November of 1985. The present defendants—Watson, Finkelstein, Ascolese and Ryan—were assigned as official court reporters for that case. They delivered transcripts to plaintiff on a daily basis. However, both plaintiff and his trial counsel allege, in affidavits, that they did not receive, until January 1986, a transcript covering the final trial days of November 14 and 15, 1985.

Plaintiff alleges that the defendants deliberately altered significant portions of the trial transcript. Plaintiff's trial counsel supports these allegations in an affidavit and in his testimony at the transcript settlement hearing. Plaintiff and his trial counsel allege two principal areas of inaccuracy. Plaintiff first contends that changes were made to the charge conference at page 777, replacing the words "or by any other means" with "otherwise killed." *See* Pl. Rule 3(g) Statement ¶ 1 (docket entry # 120). Essentially, the alleged change in language was from "stran-

gled or killed by any other means" to "strangled or otherwise killed." Second, plaintiff contends that the defendants deleted statements which should appear on page 837, where he claims his trial counsel objected to the prosecutor's statement during summation concerning the time of the murder. In this regard, the plaintiff asserts that the prosecutor improperly changed his theory of the case from that set forth in the indictment. Plaintiff further contends that the trial judge responded to this objection by stating, "[t]o the best of my recollection there was testimony to that effect." The transcript reflects neither an objection nor a statement by the court. *See id.* ¶ 2. This objection did not occur in isolation, however, as the record shows that, during the course of the prosecutor's summation, Curro's trial counsel lodged objections on at least 24 separate occasions. *See* Tr. at 822–59.

On January 9, 1987, a transcript settlement hearing was held in Kings County Supreme Court before the justice who presided at plaintiff's trial, the Hon. Edward Pincus. The court denied plaintiff's request to be present and to testify at the hearing. *See* Kobus Aff. dated Aug. 4, 1992 (docket entry # 120). Hence, only plaintiff's trial attorney, Stephen Murphy, Esq., testified at the hearing. Murphy testified to the same discrepancies in the transcript that he swears to in his affidavit, including the aforementioned discrepancies at pages 777 and 837. *See* Transcript Settlement Hearing dated Jan. 9, 1987 (Docket entry # 116, Turbin Aff., Ex. C) [hereinafter *Transcript Settlement Hearing* ], at 4–11. Plaintiff had retained an expert to examine the stenographic notes, but his attorney did not call the expert at the hearing. *See id.* at 17.

At the settlement hearing, Justice Pincus corrected one error he found on page 776. He ruled that the record incorrectly reflected part of the charge conference in that, instead of his statement on "what had to be proved," the transcript contained the language "what did not have to be proved." *Id.* at 12. Regarding plaintiff's allegations, Justice Pincus determined that he had not said "by any other means," as the plaintiff claimed, but rather "otherwise killed," as the record reflects. *Id.* at 14. Although Justice Pincus did not remember specifically whether plain-

tiff's attorney objected at page 837, *see id.* at 21, he did not order any alterations other than the one on page 776. Accordingly, Justice Pincus, "certified those portions ... reviewed to be correct as they appear, with the one exception the Court noted on page 776." *Id.* at 22. He certified this verbal ruling as the order of the court and concluded by stating that "[a] copy of today's proceedings, properly certified by the court reporter, will constitute a sufficient record for any further appeal or action by either side." *Id.* at 23.

Plaintiff commenced this action in July 1986, prior to the settlement hearing. The defendants first moved to dismiss on October 24, 1986, on the grounds that they were immune from suit under the eleventh amendment and the doctrine of judicial immunity, and that the plaintiff was collaterally estopped from litigating the issue of transcript alteration in federal court. Judge Sifton denied the defendants' motion in a Memorandum and Order dated June 11, 1987 [hereinafter *Curro I* ]. The defendants subsequently filed their answer on August 10, 1987.

In responding to the defendants' interrogatories, plaintiff reasserted his claims that the transcripts were altered, again alleging that the defendants had replaced "by any other means" with "or otherwise killed," and had deleted the objection and court response on page 837. Asked how the alterations affected his trial, plaintiff responded, "I never stated that these alterations affected the outcome of my criminal trial."

Plaintiff did not raise any issue concerning the alleged transcript alterations, which are the subject of this action, on the direct appeal from his criminal conviction. In contrast, on appeal he challenged the use of the language "or otherwise killed" as it appears in the record of the jury charge, arguing that the use of these words denied him due process by improperly amending the indictment against him. The indictment originally charged plaintiff with causing the victim's death by "strangling her and cutting up her body." Plaintiff argued that, by changing this to "strangled or otherwise killed," the court precluded him from preparing a suitable defense.

Plaintiff's conviction was affirmed by the Appellate Division, Second Department, on

May 29, 1990. *See People v. Curro,* 161 A.D.2d 784, 556 N.Y.S.2d 364 (App.Div.2d Dep't 1990). As to Curro's contention that the court, in effect, impermissibly amended the indictment by charging the jurors that they could find that the victim had been "strangled or otherwise killed" even though the indictment specifically alleged that she had been strangled, the Appellate Division, addressing the merits of this claim, ruled that "under the circumstances of this case, where no body was ever recovered, the deviation from the allegations in the indictment did not prejudice the defendant in his ability to present a defense and did not impermissibly change the theory of the indictment." *Id.,* 556 N.Y.S.2d at 367.

On August 10, 1990, the New York Court of Appeals denied Curro's application for leave to appeal. *See People v. Curro,* 76 N.Y.2d 855, 560 N.Y.S.2d 994, 561 N.E.2d 894 (1990).

Prior to the Appellate Division's affirmance of Curro's conviction, the present defendants filed a second motion to dismiss, on the grounds that the instant federal action should be dismissed or stayed on account of the then-pending criminal appeal. By Memorandum and Order dated July 24, 1990 [hereinafter *Curro II* ], Judge Sifton denied this motion. In *Curro II,* the court first found that the plaintiff, by alleging significant changes to the trial record, had pled sufficient facts upon which section 1983 relief may be granted. *See Curro II,* at 8. Judge Sifton also rejected the present defendants' request to stay the instant action pending disposition of Curro's criminal appeal, finding an incongruity in issues, as the Appellate Division was only considering the jury charge as reflected in the transcript, and not the question before this Court of whether improper changes were made to the transcript. *See id.* at 11–12.

## DISCUSSION

### I. Plaintiff's Applications

A. *Application to Prevent the Defendants from Relitigating Issues Previously Decided*

■ In an effort to prevent the Court from considering the defendants' motion for summary judgment, plaintiff cross-moves to estop the defendants from relitigating issues that were decided earlier in the chronology of this case by Judge Sifton on the defendants' two prior motions to dismiss. This argument fails to take into account the fact that the prior applications before Judge Sifton were on motions to dismiss, which are designed solely to test the sufficiency of the complaint to plead a cause of action, assuming all facts to be true. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). In contrast, the defendants' present application is a motion for summary judgment, which is broader in scope than a motion to dismiss insofar as the former not only considers the defenses asserts by the defendants, but further requires the Court to scrutinize the full record of the case to ascertain whether a genuine dispute exists with respect to material facts. *See Gallo v. Prudential Residential Servs., L.P.,* 22 F.3d 1219, 1223–24 (2d Cir.1994). Accordingly, in view of the different procedural posture in which the defendants' current motion is presented, the plaintiff's application is denied.

### B. *Plaintiff's Discovery Motions*

■ The plaintiff has two separate discovery motions pending in this action. In his first application, plaintiff moves, pursuant to Fed.R.Civ.P. 37(a), for an order (i) directing the production of materials relating to information with respect to the plaintiff that the government supplied, from 1981 through 1983, to Gerald Edward Meadows, a witness for the prosecution at plaintiff's criminal trial, and (ii) directing that plaintiff be furnished a transcript of an *in camera* proceeding at plaintiff's criminal trial, that previously had been furnished to plaintiff's criminal defense counsel. *See* Plaintiff's Letter to the Court, dated Jan. 23, 1992, at 1–2 (docket entry # 105). Plaintiff further requests interrogatories of his brother, Gerard Curro, regarding his brother's arrest for sexual abuse, interrogatories of Assistant United

States Attorney Diane F. Giacalone in regard to the prosecution of plaintiff's brother Gerard Curro and her involvement with the District Attorney's Office in plaintiff's criminal prosecution, and interrogatories of Assistant District Attorney Eric Seidel, the prosecutor at Curro's trial, pertaining to his knowledge and involvement with the United States Attorney's Office. Plaintiff contends that these materials are important because Gerard Curro testified, at the plaintiff's criminal trial, that the plaintiff admitted the murder to him. Specifically, plaintiff claims that this information is relevant to the instant case because the failure of the prosecutor to disclose *Giglio* material, and a knowing use of perjured testimony by the prosecutor, could serve to impeach the prosecutor's testimony at trial in the instant civil action.

■ In order for information to be discoverable, it must be "relevant to the subject matter involved in the pending action." Fed. R.Civ.P. 26(b)(1). To be relevant, the information sought need not be admissible at trial in its own right; rather, "[i]nformation is relevant so long as it is reasonably calculated to lead to the discovery of admissible evidence." 4 James W. Moore et al., Moore's Federal Practice ¶ 26.07[1], at 26–120 (2d ed.1995). In addition, while evidence bearing on credibility may be elicited through civil discovery, *see id.* ¶ 26.07[1], at 26–125, to be discoverable, such evidence must be reasonably calculated to "reveal information affecting the credence afforded to a witness' trial testimony." *Davidson Pipe Co. v. Laventhol and Horwath,* 120 F.R.D. 455, 462 (S.D.N.Y. 1988).

In the instant case, despite the plaintiff's contentions to the contrary, the Court regards the plaintiff's discovery requests not to bear sufficiently upon the prosecutor's character for truthfulness to justify imposing the burden of compliance with the subject subpoenas upon nonparties to this action. *See* Fed.R.Civ.P. 45(c)(3)(A)(iv). Indeed, it strikes the Court that the subject discovery requests properly belong in a habeas corpus proceeding, rather than in the instant § 1983 action.[1] Accordingly, this motion to compel is denied.

■ In his second motion to compel, plaintiff moves, again pursuant to Fed.R.Civ.P. 37(a), for an order directing the Brooklyn House of Detention for Men [the "Brooklyn House"], a nonparty to this action, to produce its Inmate Law Library Log relative to the plaintiff for the period between February 26, 1985 and January 26, 1986. The plaintiff claims that this document will bolster his assertion at trial that he understood the significance of the alleged discrepancies between the events that transpired at his criminal trial, and the transcript which memorialized such events; presumably, he wishes the finder of fact to infer, from the time he spent at the prison library, that his legal knowledge was sufficient to enable him to perceive accurately the items allegedly omitted from his transcript. In response to this nonparty document request, the Brooklyn House asserts that, despite a search of records, it has been unable to find the requested log book. Instead, the Brooklyn House has provided the plaintiff with copies of pages from the "Law Library Notary Book," that has entries indicating that plaintiff frequented the Brooklyn House law library during the period in question. *See* Axelrod Aff., Ex. A (docket entry # 130). The Court's review of this notary book reveals ample evidence to establish that the plaintiff visited the library on several occasions during the period in question. In view of the sufficiency of the documents provided to support the plaintiff's point, and the nonparty's good-faith effort to comply with the plaintiff's subpoena, the Court regards further discovery of this matter to be redundant. Accordingly, this motion to compel likewise is denied.

Since discovery has closed, the Court now turns to address the defendants' motion for summary judgment.[2]

---

1. It seems that the plaintiff would be better served to consult the rules governing habeas corpus petitions brought under 28 U.S.C. § 2254, and to explore the availability of a pre-petition motion seeking such discovery under Rule 27 of the Federal Rules of Civil Procedure.

2. In view of the Court's determination that the defendants' qualified immunity defense warrants the dismissal of the entire action, *see infra* Discussion, Part II.D, the Court holds that the failure of the requested discovery materials to bear a proximate relationship to the defendants' quali-

## II. Defendants' Motion for Summary Judgment

### A. *Standards Governing Motion for Summary Judgment*

Under the law of the Second Circuit, a district court must weigh the following considerations in evaluating whether to grant a motion for summary judgment with respect to a particular claim:

First, summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Second, the burden is upon the moving party to demonstrate that no genuine issue respecting any material fact exists. In considering that, third, all ambiguities must be resolved and all inferences drawn in favor of the party against whom summary judgment is sought. Fourth, the moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case. When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper.... Finally, the trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding, it does not extend to issue-resolution.

*Gallo v. Prudential Residential Servs., L.P.,* 22 F.3d 1219, 1223–24 (2d Cir.1994) (internal case citations omitted).

### B. *Absolute Immunity, Abstention and the Eleventh Amendment*

 Certain of the defendants' arguments on their motion for summary judgment do not require extended discussion.

First, contrary to the defendants' assertion, the defense of judicial (or absolute) immunity is unavailable to the defendant court reporters. *See Antoine v. Byers & Anderson, Inc.,* — U.S. —, —, 113 S.Ct. 2167, 2172, 124 L.Ed.2d 391 (1993) (Court reporters are not absolutely immune from damages liability.); *see also Robison v. Via,* 821 F.2d 913, 919 (2d Cir.1987) ("[Q]ualified immunity has become the norm for the protection of official action.") (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 807, 102 S.Ct. 2727, 2732, 73 L.Ed.2d 396 (1982)). Next, the Court rejects the defendants' contention that the abstention doctrine counsels this Court to refrain from hearing this case; indeed, the concern of comity is not implicated as there is presently no ongoing proceeding in the state courts. Correlatively, there is no requirement that state remedies first be exhausted in order to bring a cause of action under 42 U.S.C. § 1983. *See Preiser v. Rodriguez,* 411 U.S. 475, 494, 93 S.Ct. 1827, 1838, 36 L.Ed.2d 439 (1973).

 Further, the defendants' assertion that the plaintiff's claims are barred by the eleventh amendment is without merit. It is well established that the eleventh amendment only bars recovery against an employee who is sued in her official capacity; it does not protect an employee from personal liability if she is sued in her "individual" or "personal" capacity, since the state treasury is not at risk. *See Farid v. Smith,* 850 F.2d 917, 921–23 (2d Cir.1988); *see also Eng v. Coughlin,* 858 F.2d 889, 897 (2d Cir.1988) ("It is only when the state official is sued and held liable in his individual capacity that the suit may lie.") (citing *Papasan v. Allain,* 478 U.S. 265, 278 & n. 11, 106 S.Ct. 2932, 2940 & n. 11, 92 L.Ed.2d 209 (1986)). Moreover, "a state's voluntary decision to indemnify its public servants does not transform a personal-capacity action against a state official into an official-capacity action against the state." *Farid,* 850 F.2d at 923. Therefore, to the extent the plaintiff asserts claims against the defendant court reporters in their personal capacity, the defendants' eleventh amendment argument fails.

fied immunity defense constitutes an additional ground to deny the plaintiff's motions to compel

discovery.

## C. *Statement of Claim under § 1983*

 42 U.S.C. § 1983 allows an individual to bring suit against persons who, under color of state law, have caused him to be "depriv[ed] of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir.1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816, 105 S.Ct. 2427, 2432, 85 L.Ed.2d 791 (1985)), *cert. denied*, ─── U.S. ───, 114 S.Ct. 2749, 129 L.Ed.2d 867 (1994). In order to state a claim cognizable under section 1983, the plaintiff must allege " '(1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States.' " *Eagleston v. Guido*, 41 F.3d 865, 876 (2d Cir.1994) (quoting *Dwares v. City of New York*, 985 F.2d 94, 98 (2d Cir.1993)); *see Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981), *overruled in part on other grounds, Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Katz v. Klehammer*, 902 F.2d 204, 206 (2d Cir.1990).

 The first step in analyzing a § 1983 claim is to identify the specific federal right allegedly infringed. *See Albright v. Oliver*, ─── U.S. ───, ───, 114 S.Ct. 807, 811, 127 L.Ed.2d 114 (1994). In this regard, the Supreme Court has identified three general categories of § 1983 claims that may be brought against the State under the Due Process Clause of the Fourteenth Amendment. *See Zinermon v. Burch*, 494 U.S. 113, 125, 110 S.Ct. 975, 983, 108 L.Ed.2d 100 (1990). First, a plaintiff may bring suit under § 1983 to obtain a remedy for a state official's violation of any of the rights protected by the Bill of Rights, such as the right to freedom of speech or freedom from unreasonable searches and seizures. *See id.* "Second, the Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions 'regard-

less of the fairness of the procedures used to implement them.' " *Id.* (quoting *Daniels v. Williams*, 474 U.S. at 331, 106 S.Ct. at 664). "As to these two types of claims, the constitutional violation actionable under § 1983 is complete when the wrongful action is taken." *Id.* (citations omitted). That is to say, actions which violate a *substantive* right under either the Bill of Rights or the Due Process Clause will give rise to a federal civil rights action regardless of the existence of a state remedy. *See id.* Third, a § 1983 action also may be brought for a violation of "procedural due process," which corresponds to the Due Process Clause's "guarantee of fair procedure." *Id.* In this third category, however, "the existence of state remedies *is* relevant in a special sense," because in a procedural due process claim, "the deprivation by state action of a constitutionally protected interest in 'life, liberty or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law.*" *Id.* (emphasis in original) (quoting *Parratt*, 451 U.S. at 537, 101 S.Ct. at 1913); *see id.* at 131–32, 110 S.Ct. at 986 (noting that this category applies both to deprivations of liberty as well as property).

Viewing plaintiff's allegations with a spirit of liberality, *see Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972), the Court regards the plaintiff to assert violations of both procedural and substantive due process. Accordingly, the Court will address each of these analyses in turn.

### 1. *Procedural Due Process Claim*

 Plaintiff alleges that the defendant court reporters, through their random and unauthorized acts, deprived him of his due process guarantee of fair procedure in obtaining a reasonably accurate transcript of the proceedings at his trial that preserved his counsel's objections for purposes of appeal.

 Generally, a deprivation of liberty or property is not cognizable under 42 U.S.C. § 1983 when state post-deprivation remedies are adequate to protect the plaintiff's procedural due process rights, and the conduct causing the deprivation is random and unauthorized, rather than effected pursuant to an

established state procedure. *See Zinermon v. Burch,* 494 U.S. 113, 132, 110 S.Ct. 975, 987, 108 L.Ed.2d 100 (1990); *Hudson v. Palmer,* 468 U.S. 517, 533–34, 104 S.Ct. 3194, 3204, 82 L.Ed.2d 393 (1984); *Parratt v. Taylor,* 451 U.S. 527, 541, 101 S.Ct. 1908, 1916, 68 L.Ed.2d 420 (1981), *overruled in part on other grounds, Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). Accordingly, if the State is able, through adequate state post-deprivation remedies, to compensate the plaintiff for unauthorized intentional deprivations, or otherwise to resolve the issues presented, the State has provided all the process that is due for purposes of § 1983. *See, e.g., Katz v. Klehammer,* 902 F.2d 204, 206–07 (2d Cir.1990) (Alleged mismanagement of cooperative building by employees of New York City Department of Housing, not resulting from some established state procedure (and therefore constituting a random, unauthorized act), failed to state a claim under § 1983, because the proceeding permitted under Article 78 of the New York Civil Practice Law and Rules [CPLR] provided an adequate state post-deprivation remedy.); *Campo v. New York City Employees' Retirement System,* 843 F.2d 96, 102–03 (2d Cir.) (no claim stated under § 1983 regarding cessation of retirement benefits available for city-administered plan because Article 78 of the CPLR provided an adequate postdeprivation remedy), *cert. denied,* 488 U.S. 889, 109 S.Ct. 220, 102 L.Ed.2d 211 (1988); *Giglio v. Dunn,* 732 F.2d 1133, 1135 (2d Cir.) (Tenured high-school principal who resigned, and alleged that his resignation was coerced, and that such coercion was not preceded by a hearing, was not denied due process because the State provided an adequate postdeprivation remedy under Article 78 of the CPLR.), *cert. denied,* 469 U.S. 932, 105 S.Ct. 328, 83 L.Ed.2d 265 (1984). The fact that state procedures would not afford relief identical to that sought in the federal civil rights action does not make those procedures constitutionally inadequate. *See Hudson,* 468 U.S. at 535, 104 S.Ct. at 3204–05. Further, for purposes of this analysis, it is inconsequential that the state postdeprivation remedy is no longer available because such claim has become barred by the statute of limitations. *See Campo,* 843 F.2d at 102 n. 6.

With respect to claims within this paradigm, the relevant inquiry considers what procedural safeguards the State has provided. *See Zinermon,* 494 U.S. at 126, 110 S.Ct. at 983. Whether a hearing, or some other procedural safeguard, is required before or after deprivation occurs depends ultimately upon "whether the state is in a position to provide for predeprivation process." *Hudson,* 468 U.S. at 534, 104 S.Ct. at 3204; *see Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 436, 102 S.Ct. 1148, 1158, 71 L.Ed.2d 265 (1982) (" '[T]he necessity of quick action by the State or the impracticality of providing any predeprivation process' " may mean that the postdeprivation remedy is constitutionally adequate.) (quoting *Parratt,* 451 U.S. at 539, 101 S.Ct. at 1913); *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976) (enumerating factors to be evaluated in determining what procedural protections the Constitution requires in a particular case). "[I]f the deprivation is caused by random, unauthorized state conduct and an adequate post-deprivation hearing is available, there is no denial of 'due process,' and therefore, no constitutional violation on which to base a § 1983 claim." *Kraebel v. New York City Dep't of Housing Preservation and Dev.,* 959 F.2d 395, 404 (2d Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 326, 121 L.Ed.2d 245 (1992); [3] *see Butler v. Castro,* 896 F.2d 698, 700 (2d Cir.1990) ("[U]nder *Parratt,* an adequate post-deprivation remedy is a defense to a Section 1983 due process claim only where the deprivation is random and unauthorized.").

In the instant case, Curro does not challenge any matter of state policy, *cf. Farid v. Smith,* 850 F.2d 917, 925 (2d Cir.1988) (no need to analyze adequacy of state postdeprivation remedies where challenge is to policy); on the contrary, he alleges that his due process rights were violated through the deliberate, random and unauthorized acts of the

---

**3.** In *Kraebel,* the *Parratt/Hudson* rule was not applicable because the plaintiff did not challenge a random, unauthorized act, but rather attacked established state procedures that produced delays in the remittance of payments to her. *See Kraebel,* 959 F.2d at 404.

defendant court reporters. *See* Pl.Opp. to Def. Motion for Summary Judgment dated Aug. 30, 1992, at 21 (docket entry # 121). Thus, the issue before the Court in connection with the plaintiff's procedural due process claim is whether the State provided, in theory and in practice, adequate postdeprivation remedies to correct any unfairness to the plaintiff resulting from a deliberate defalcation in his trial transcript.

The State of New York provides postdeprivation remedies that are adequate to cure errors or omissions in a transcript of a criminal defendant's trial. Specifically, section 5525(c) of the New York Civil Practice Law & Rules, and section 460.70(1) of the New York Criminal Procedure Law, provide mechanisms for challenging inaccuracies in a transcript through a transcript settlement hearing, which, whenever possible, is to be presided by the same judge who presided at the trial in question. *See Cousart v. Hammock,* 745 F.2d 776, 778 (2d Cir.1984); N.Y.Civ.Prac.L. & R. § 5525(c); N.Y.Crim. Proc.Law § 460.70(1). Further, New York law firmly rests ultimate responsibility for the integrity and accuracy of the record and transcript of the judicial proceeding upon the trial judge. *See* N.Y.Jud.Law § 7–a; *People v. Roldan,* 96 A.D.2d 476, 465 N.Y.S.2d 35, 36 (App.Div. 1st Dep't 1983). In addition, any significant unresolved questions concerning the transcript's accuracy could be raised on appeal, and if found to be substantial, would permit a remand of the proceedings back to the original trial judge to resettle the transcript. *See People v. Locke,* 154 A.D.2d 622, 546 N.Y.S.2d 452, 453 (App.Div.2d Dep't 1989); *Roldan,* 465 N.Y.S.2d at 36.

The Court is also satisfied that these procedures were fairly administered in practice. A review of the minutes of the settlement hearing reveals that it was sufficiently comprehensive to allow a fair litigation of all relevant issues bearing upon the accuracy of the transcript for purposes of appeal. Further, the adequacy of this hearing is not diminished by the trial judge's decision not to allow the plaintiff to attend, as the record shows that Curro was adequately represented by counsel, and that Curro's trial counsel testified at this hearing as a witness.

Plaintiff argues, however, that notwithstanding the availability of state procedures to settle the transcript, these procedures are without relevance to his circumstances because, although they serve to establish what transpired at his trial, they fail to address the precise issue of whether his trial transcript was deliberately tampered with. While this argument is cogent to a substantive due process claim, *see infra,* it is misplaced in relation to a procedural due process claim; rather, intentional conduct, or its functional equivalent, provides the 'ticket' into federal court to vindicate an individual's constitutional rights. Indeed, the Supreme Court has held that the incidence of intentional conduct does not require the State to provide an additional remedy, such as compensatory or punitive damages, in order for the state procedural regime to satisfy due process. *See Hudson,* 468 U.S. at 536, 104 S.Ct. at 3205 ("[E]ven if petitioner intentionally destroyed respondent's personal property during the challenged shakedown search, the destruction did not violate the Fourth Amendment since the Commonwealth of Virginia has provided respondent an adequate postdeprivation remedy."). Therefore, New York's transcript settlement procedures provided all the process that Curro was due, and whether the defendant court reporters acted deliberately is inconsequential, aside from triggering the procedural due process analysis in the first instance. *See generally Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) (Section 1983 does not apply to acts that are merely negligent.); *see also Carson v. Veasy,* 849 F.2d 608, No. 88–1129, 1988 WL 60725, at *1 (6th Cir. June 14, 1988) (Dismissing complaint alleging that the defendant court reporter intentionally falsified and altered a transcript, holding that summary judgment was proper because the plaintiff had not alleged or shown the inadequacy of state remedies.) (citing *Hudson,* 468 U.S. at 533; *Parratt,* 451 U.S. at 543).

Accordingly, since no genuine issue of fact exists to prevent a determination that New York provided adequate postdeprivation remedies to correct any deficiencies in Curro's trial transcript, partial summary judgment is granted in favor of the defendants to the

extent that the complaint asserts a procedural due process violation.

### 2. *Substantive Due Process Claim*

In a substantive due process claim, the fairness of the procedures provided by the State is not at issue. Rather, this category of § 1983 claim serves to vindicate an individual's substantive due process right to be free from "certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.'" *Zinermon v. Burch,* 494 U.S. 113, 125, 110 S.Ct. 975, 983, 108 L.Ed.2d 100 (1990) (quoting *Daniels,* 474 U.S. at 331, 106 S.Ct. at 664); *Lowrance v. Achtyl,* 20 F.3d 529, 537 (2d Cir.1994). As to this type of claim, "the constitutional violation actionable under § 1983 is complete when the wrongful action is taken." *Zinermon,* 494 U.S. at 125, 110 S.Ct. at 975 (citations omitted).

"The first step in substantive due process analysis is to identify the constitutional right at stake." *Lowrance,* 20 F.3d at 537 (citing *Collins v. City of Harker Heights,* 503 U.S. 115, 123–25, 112 S.Ct. 1061, 1068, 117 L.Ed.2d 261 (1992)). This threshold determination of the right at issue is critical because the seriousness of the official misconduct may determine whether the constitutional line between a procedural and a substantive due process violation has been crossed. *See id.* Interwoven with the nature of the right at issue is the capriciousness of the act alleged, because while "[s]ubstantive due process protects individuals against government action that is arbitrary, conscience shocking, or oppressive in a constitutional sense, [it does not secure an individual] against government conduct that is incorrect or ill-advised." *Id.* (internal citations and quotations omitted).

■ The Supreme Court has recognized that substantive due process embraces an individual's right of access to the courts. *See Bounds v. Smith,* 430 U.S. 817, 821, 97 S.Ct. 1491, 1494, 52 L.Ed.2d 72 (1977) ("[P]risoners have a constitutional right of access to

the courts."); *see also Morello v. James,* 810 F.2d 344, 347 (2d Cir.1987)[4] (A substantive due process violation occurs where a state official's deliberate misconduct has the effect of depriving an individual of his or her right of access to the courts.); *Jones v. Smith,* 784 F.2d 149, 151 (2d Cir.1986) (Inmates were entitled to a hearing on their claim that prison mail policy violated their right of access to the courts.); *but see Taylor v. Coughlin,* 29 F.3d 39, 40 (2d Cir.1994) (per curiam) ("[T]here is no constitutional right to a typewriter as an incident to the right of access to the courts.") (internal quotes omitted). This right of access to the courts encompasses a criminal defendant's right to obtain a trial transcript for purposes of appeal. *See Bounds,* 430 U.S. at 822, 97 S.Ct. at 1495 ("Because ... 'adequate and effective appellate review' is impossible without a trial transcript or adequate substitute ... States must provide trial records to inmates unable to buy them.") (quoting *Griffin v. Illinois,* 351 U.S. 12, 20, 76 S.Ct. 585, 591, 100 L.Ed. 891 (1956)); *Balabin v. Scully,* 606 F.Supp. 176, 183 (S.D.N.Y.1985) ("[O]fficials may not interfere with [an] existing transcript."). Because effective appellate review would be substantially hampered if the trial transcript were materially in error, it stands to reason, therefore, that this substantive due process right would be meaningless unless it also embraced the right to a reasonably accurate transcript that, among other things, preserves the criminal defendant's objections for purposes of appeal, and readily lends itself to a just resolution of any material inaccuracies in said transcript through a transcript settlement procedure.

■ In the instant case, the plaintiff alleges that the defendant court reporters intentionally violated his substantive due process right to a reasonably accurate transcript of his criminal trial. According to plaintiff, a reasonably accurate transcript would reflect (i) the language used by the trial judge at the charge conference, at page 777 of the tran-

---

4. In *Morello,* a prison inmate brought a § 1983 action alleging that state prison officials intentionally confiscated a legal brief he had been preparing for an appeal, and some accompanying legal research materials. *See Morello,* 810

F.2d at 345. On appeal, the Second Circuit reversed the dismissal of the plaintiff's complaint, finding that the plaintiff's allegation "describe[d] an unconstitutional denial of Morello's access to the courts." *Id.* at 346.

script, and (ii) his counsel's objection during the course of the prosecutor's summation, at page 837 of the transcript, including the trial judge's response thereto.

As plaintiff's position with respect to these items is corroborated by the sworn testimony of Curro's trial counsel, this dispute constitutes a genuine issue of fact. Accordingly, the issue before the Court on this motion for summary judgment sharpens to whether this factual dispute is *material* under the substantive law of § 1983. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). This determination of materiality, in turn, rests upon whether, as a matter of law, a deliberate stenographic error or omission of the precise nature at issue could be regarded as "arbitrary in the constitutional sense and therefore violative of substantive due process." *Lowrance*, 20 F.3d at 537.

■■■ While the Court readily concludes that the alleged change in language at the charge conference, from the phrase "or by any other means," to the phrase "otherwise killed," constitutes an immaterial discrepancy that is unable to withstand a motion for summary judgment, a closer question is presented with respect to the omitted objection. This is so because the term "arbitrary" would appear to denote some measure of substantiality; that is to say, the implication that the recipient of the subject decision could sustain some tangible harm.[5] As the Court now turns to discuss, in view of the uncontroverted evidence that Curro's trial counsel lodged at least 24 separate objections during the prosecutor's summation, this question need not be answered, since the absence of well-defined guideposts concerning the lawfulness of the alleged conduct renders said conduct vulnerable to a qualified immunity defense.

## D. *Qualified Immunity*

■■■ Under the doctrine of qualified immunity, persons who perform quasi-judicial functions that are ministerial in nature—including a court reporter, *see Antoine v. Byers & Anderson, Inc.*, —— U.S. ——, ——, 113 S.Ct. 2167, 2172, 124 L.Ed.2d 391 (1993)—are shielded from suit for civil damages as long "as their conduct does not violate clearly established [federal] statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *see Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987); *see also Davis v. Scherer*, 468 U.S. 183, 193–94, 104 S.Ct. 3012, 3019, 82 L.Ed.2d 139 (1984) (An official only loses his or her qualified immunity if the constitutional right allegedly violated was 'clearly established' at the time of the violation.); *Neu v. Corcoran*, 869 F.2d 662, 664 (2d Cir.) ("The entitlement to qualified immunity is an immunity from suit, rather than a mere defense to liability.") (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985)), *cert. denied*, 493 U.S. 816, 110 S.Ct. 66, 107 L.Ed.2d 33 (1989). "The doctrine protects public officials from personally facing the risk of incurring ruinous liability in the form of money damages, which would deter qualified people from public service. It also safeguards the public interest in having its employees act with independence and without fear of consequences." *Eng v. Coughlin*, 858 F.2d 889, 895 (2d Cir.1988) (internal quotes omitted).

■■■ The standard governing the qualified immunity doctrine is entirely objective, and no other circumstances are relevant. *See Davis*, 468 U.S. at 191, 104 S.Ct. at 3017.

---

5. Black's Law Dictionary defines the term "arbitrary" as follows:

> **Arbitrary.** Not done according to reason or judgment; depending on the will alone; absolutely in power; capriciously; tyrannical; despotic. Without fair, solid, and substantial cause; that is, without cause based upon the law, not governed by any fixed rules or standard. Ordinarily, "arbitrary" is synonymous with bad faith or failure to exercise honest judgment and an arbitrary act would be one performed without adequate determination of principle and one not founded in nature of things.

Black's Law Dictionary 55 (Abridged 5th ed. 1983).

"A plaintiff who seeks damages for violation of constitutional or statutory rights may overcome the defendant official's qualified immunity only by showing that those rights were clearly established at the time of the conduct at issue." *Id.* at 197, 104 S.Ct. at 3020–21. Whether the *federal* right allegedly violated was clearly established is the critical question in this inquiry; "[o]fficials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision." *Id.* at 194, 104 S.Ct. at 3019. Further, officials are shielded so long as their actions could reasonably have been thought consistent with the rights allegedly violated. *See Anderson,* 483 U.S. at 638, 107 S.Ct. at 3038.

If the law at the time of the alleged violation was clearly established, the defense of qualified immunity generally will fail, since a reasonably competent official should know the law governing his or her conduct. *See Harlow,* 457 U.S. at 818–19, 102 S.Ct. at 2738. Indeed, a violation of clearly established law will defeat qualified immunity. *See Davis,* 468 U.S. at 197, 104 S.Ct. at 3020–21. To constitute "clearly established law," it is not necessary that the very action in question has previously been held unlawful; rather, "in the light of pre-existing law the unlawfulness must be apparent." *Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039. However, this determination is not to be made in the abstract; rather, a party seeking damages, pursuant to 42 U.S.C. § 1983, from an official asserting a qualified immunity defense "bears the burden of overcoming that defense by proving the existence of a clear, factually-defined, well-recognized right of which a reasonable official should have known." 14A C.J.S. *Civil Rights* § 305, at 302 (1991); *see P.C. v. McLaughlin,* 913 F.2d 1033, 1042 (2d Cir.1990) ("[T]he viability

of a qualified immunity defense turns on a particularized inquiry....") (citing *Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039).

Turning to the issue of the apparent unlawfulness of the defendants' conduct in the light of preexisting law, the Second Circuit Court of Appeals has not addressed directly the question of whether a cause of action may be brought under § 1983 against a court reporter accused of falsifying a transcript to an extent similar to that in the present case; indeed, the constitutional right of an individual to a less-than-absolutely accurate trial transcript is not entirely clear. *See Burrell v. Swartz,* 558 F.Supp. 91, 92 (S.D.N.Y.1983) ("If a state fails to afford a fair and adequate procedure for settling transcripts on which to base such an appeal, or if a state official intentionally alters a transcript in a way that prejudices a defendant's appeal, the due process clause of the fourteenth amendment *might* be violated.") (emphasis added). Thus, for example, in *Green v. Maraio,* 722 F.2d 1013 (2d Cir.1983), the Second Circuit Court of Appeals, bypassing the issue of whether the plaintiff's federal rights had been violated, found a court reporter to be immunized from liability under § 1983 on the basis of his qualified immunity with respect to actions carried out by the court reporter pursuant to the judge's explicit instructions.[6] *See id.* at 1018. No other decision of the Second Circuit Court of Appeals, or of the Supreme Court for that matter, specifically establishes a criminal defendant's right to a transcript free of errors sufficiently narrow to be remediable through a transcript settlement hearing. Since it appears that, during 1985, there was a split in authority among the district courts within this Circuit as to whether, in the absence of prejudice to the statutory right to appeal, a claim could be maintained against a court reporter for falsifying a transcript,[7] *see, e.g.,*

---

**6.** *Green* is distinguishable from the instant case in that Curro does not allege that the defendant court reporters, in altering the transcript, acted pursuant to the trial judge's instructions.

**7.** The Court expressly concludes that the plaintiff is unable to demonstrate that the alleged changes to his transcript could have prejudiced his statutory right to appeal. The Court bases this determination upon (i) the insubstantial distinction in

meaning between the phrases "strangled or killed by any other means" and "strangled or otherwise killed," and (ii) the New York State Appellate Division's consideration of the substance of the alleged missing objection concerning the prosecutor's departure from the precise theory of the case articulated in the indictment. *See People v. Curro,* 161 A.D.2d 784, 556

*Gutierrez v. Vergari,* 499 F.Supp. 1040, 1047 (S.D.N.Y.1980) (claim of intentional tampering with transcripts survives motion to dismiss) [8]; *contra Burrell,* 558 F.Supp. at 92 ("To prove such a violation plaintiff would have to show either the unfairness of available settlement procedures or the existence of intentional tampering; then, he would have to prove the alleged errors and omissions in the trial transcript prejudice his statutory right to appeal."), the absence of dispositive caselaw militates in favor of the applicability of a qualified immunity defense. *See Molinelli v. Tucker,* 901 F.2d 13, 16 (2d Cir.1990) (absence of dispositive Second Circuit caselaw is a basis on which to rest a claim of qualified immunity); *see, e.g., Hawkins v. Steingut,* 829 F.2d 317, 320 (2d Cir. 1987) (Although certain Supreme Court decisions had developed a useful framework for assessing the constitutionality of patronage dismissal, these decisions, nevertheless, did not "clearly establish" the law with respect to every governmental position.).

■ The plaintiff argues, however, that 18 U.S.C. § 1506 provides the relevant standard of conduct, and therefore overcomes the defendants' qualified immunity defense. Enacted in 1948, 18 U.S.C. § 1506 provides in pertinent part:

Whoever feloniously ... alters [or] falsifies ... any record ... or other proceeding, in any court of the United States, whereby any judgment is reversed, made void, or does not take effect ... [s]hall be fined not more than $5,000 or imprisoned not more than five years, or both.

18 U.S.C. § 1506 (1982). The plaintiff's argument is not without appeal because this statute constitutes clearly established federal law proscribing a deliberate falsification of a transcript in certain instances. If this statute proscribed *any* deliberate alteration of a

transcript, without regard to ensuing consequences upon the entry of judgment, the Court might be inclined to regard a qualified immunity defense as unavailable. However, a close reading of the statute reveals that not all deliberate alterations are rendered unlawful; rather, this statute only proscribes certain alterations or falsifications of a transcript "whereby any judgment is reversed, made void, or does not take effect...." 18 U.S.C. § 1506.[9] Since, in this case, *Harlow* and its progeny instruct that the qualified immunity defense extends only to conduct that does not violate clearly established rights of which a reasonable court reporter would have known, *see Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738, the issue sharpens to whether, under all the facts and circumstances presented, a reasonable court reporter could have believed that the plaintiff's appellate rights would not be prejudiced through the alteration or omission of the specific portions of the transcript that the plaintiff assails.

The Court is of the opinion that the defense of qualified immunity insulates each of the present defendants from suit, because a reasonable court reporter could have believed that the alleged alterations to the transcript would not prejudice Curro's appeal. Underlying the Court's determination is the insubstantial nature of the alleged alterations to the transcript relative to the totality of the circumstances surrounding the proceedings held on November 14 and 15, 1985. Although it seems to the Court that a reasonable court reporter, if asked in the abstract conundrum of ordinary conversation, likely would acknowledge that she was aware that Curro possessed a federal right not to have his appeal prejudiced through an incomplete transcription of his criminal trial that omitted reference to his counsel's objection, the factu-

N.Y.S.2d 364, 367 (App.Div.2d Dep't 1990); *supra* Background.

8. In addition, in *Mathis v. Clerk of the First Department,* 631 F.Supp. 232 (S.D.N.Y.1986), a decision rendered in March 1986 (shortly *after* the conduct complained of in the instant case), Judge Sweet of the United States District Court for the Southern District of New York ruled that a complaint, alleging that a court clerk failed to furnish transcripts to counsel until one and one-

half years after the court granted the plaintiff's application for leave to appeal, stated a claim sufficient to withstand a motion to dismiss. *See id.* at 233, 235.

9. The defendants do not argue that this statute fails to constitute clearly established federal law on the ground that the phrase, "any court of the United States," lends itself to a reasonable interpretation that it is inapplicable to state court proceedings.

al intricacies of the present case render the contours of this right far more nebulous than it otherwise might appear in theory.

The Court regards the context in which the subject objection was made to impel the conclusion that a reasonable court reporter could have believed that Curro's appellate rights would not be prejudiced through the omission of this objection from the transcript. Most significantly, the context in which the subject objection arose was *not* one in which the prosecutor's summation was suddenly interrupted by the dissenting voice of Curro's trial counsel. Rather, a review of the transcript of plaintiff's criminal trial shows that, during the course of the prosecutor's summation—which was not unusually long, spanning 37 pages of the trial transcript, *see* Tr. 822–59—Curro's trial counsel voiced objections on at least 24 separate occasions. Tr. at 822, 822–23, 823, 824, 825, 825, 825–30, 834, 835, 835, 838, 839, 839, 840, 843, 844, 846, 851, 852, 853, 854, 855, 855, 859. According to Curro, on a twenty-fifth occasion, corresponding to page 837 of the transcript, lines 12 and 13, a record of the objection was deliberately omitted. There does not appear to have been anything remarkable about the omitted objection that would render it especially memorable in relation to the 24 recorded objections; according to the plaintiff, the missing objection was in response to the following statement of the prosecutor: "She went home and whatever happened, happened after that." Tr. at 837; *see Transcript Settlement Hearing, supra,* at 5. In view of the totality of the circumstances, including the substantial frequency with which Curro's trial counsel objected to the prosecutor's summation during a relatively short period of time, the Court concludes that a competent court reporter, faced with these exact circumstances, "could have reasonably believed" that the omission of the subject objection would not prejudice Curro's appellate

rights.[10] *Eng,* 858 F.2d at 895 (citing *Robison v. Via,* 821 F.2d 913, 921 (2d Cir.1987)); *see Anderson,* 483 U.S. at 636–37, 646, 107 S.Ct. at 3037, 3042 (Answering in the negative the question of "whether a federal law enforcement officer who participates in a search that violates the Fourth Amendment may be held personally liable for money damages *if a reasonable officer could have believed* that the search comported with the Fourth Amendment.") (emphasis added); *cf. P.C. v. McLaughlin,* 913 F.2d 1033, 1040 (2d Cir.1990) (qualified immunity defense available insofar as existence of generalized right pursuant to federal statute to a free appropriate public education did not clearly establish a particularized right of the plaintiff, a mildly retarded youth, to any specific residential placement); *Walentas v. Lipper,* 862 F.2d 414, 423 (2d Cir.1988) ("*Harlow* and its progeny make clear that the objective legal reasonableness of an official's actions must be viewed in light of the action's relationship to the clearly established law at the time, and not to some more general standards of reasonable and appropriate governmental conduct."), *cert. denied,* 490 U.S. 1021, 109 S.Ct. 1747, 104 L.Ed.2d 183 (1989); *Robison v. Via,* 821 F.2d 913, 921 (2d Cir.1987) (Although "it has long been clearly established that an arrest without probable cause is a constitutional violation, [n]onetheless, the arresting officer is entitled to qualified immunity as a matter of law if the undisputed facts and all permissible inferences favorable to the plaintiff show either (a) that it was objectively reasonable for the officer to believe that probable cause existed, or (b) that *officers of reasonable competence could disagree on whether the probable cause test was met.*") (emphasis added) (citing *Malley v. Briggs,* 475 U.S. 335, 340–42, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986)) (other citation omitted).

In sum, therefore, the Court is unpersuaded that the unlawfulness of the alleged con-

---

10. The Court expressly holds that the defendants' qualified immunity defense also overcomes plaintiff's § 1983 allegation with respect to the alleged change in language in the transcript, from the phrase "or by any other means," to the phrase "otherwise killed." Further, this same conclusion applies to the change made by Justice Pincus to page 776 of the transcript which, in any event, Curro does not allege to have resulted

from a deliberate alteration by the defendant court reporters. Specifically, at the transcript settlement hearing, Justice Pincus, in his sole adjustment to the record, ruled that the record on page 776 incorrectly reflected part of the charge conference by containing the words "what did not have to be proved," instead of his statement on "what had to be proved." *Transcript Settlement Hearing, supra,* at 12.

duct should have been apparent to the defendant court reporters in light of pre-existing law. *See Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039. Otherwise stated, even assuming that a purposeful failure of the defendant court reporters to transcribe the objection in question abridged Curro's liberty interest, there is no basis for this Court to conclude that such conduct, at the time that it occurred, and in view of the all of the factual intricacies presented, violated "clearly established [federal] ... rights of which a reasonable [court reporter] would have known." *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738. Accordingly, the defense of qualified immunity protects each of the defendants from suit for damages. *See Davis,* 468 U.S. at 197, 104 S.Ct. at 3020–21; *see also Carson v. Veasy,* 849 F.2d 608, No. 88–1129, 1988 WL 60725, at *1 (6th Cir. June 14, 1988) (defendant court reporter entitled to qualified immunity against claim that he intentionally falsified and altered a transcript). Inasmuch as injunctive relief is not sought, this action must be dismissed.

## CONCLUSION

In accordance with the foregoing, the Court enters the following orders in this action:

(1) Plaintiff's motion, pursuant to Fed. R.Civ.P. 37(a), for an order directing the prosecutor at his criminal trial to disclose certain information relative to the testimony of the plaintiff's brother therein, and directing the production of other related information, is DENIED.

(2) Plaintiff's motion, pursuant to Fed. R.Civ.P. 37(a), for an order compelling the Brooklyn House of Detention for Men, a nonparty to this action, to produce its Inmate Law Library Log, is DENIED.

(3) Plaintiff's cross-motion to estop the defendants from relitigating issues previously addressed in their motions to dismiss is DENIED.

(4) Defendants' motion for summary judgment pursuant to Fed.R.Civ.P. 56(b) is GRANTED as to each defendant. Accordingly, the Clerk of the Court is directed to enter judgment in favor of the defendants dismissing this case in its entirety.

SO ORDERED.